FARMERS & MERCHANTS NATIONAL BANK OF GALVA, ILLINOIS, APPELLANT, v. CHARLES W. MOSHER ET AL., APPELLEES, IMPLEADED WITH DIXON NATIONAL BANK OF DIXON, ILLINOIS, ET AL., APPELLANTS.*

FILED APRIL 30, 1903.   No. 9,891.

1. Insolvent Debtor: TRANSFER OF PROPERTY. Where property in large amount, without fraudulent intent, has been turned over by an insolvent debtor to his attorneys in consideration of past and future services and a general retainer for himself and wife, any creditor desiring to attack such transfer should do so before services to the full value of the property are rendered.

2. Former Decision. Former conclusion as to defendants Whedon and Magoon, so far as relates to such property, adhered to.

*Rehearing allowed. See opinion, p. 724, *post*.

3. **Garnishment:** WAIVER. Taking a general money judgment and issuing execution, which is returned wholly unsatisfied, is not a waiver of attachment lien by garnishment.

4. ————: ————. Taking no order against a garnishee who denies holding property, not a waiver of garnishment liens.

5. **Garnishment Lien:** BILL IN EQUITY. Garnishment lien may be enforced by bill in equity, in proper case.

6. ————: ————. By promptly resorting to equity after judgment in principal action, a garnishment lien is extended through the equity action.

7. **Liability of Garnishee.** Garnishee turning over money on order of principal debtor pending such action is liable to the creditor therefor.

8. **Former Conclusion Adhered to.** Former conclusion adhered to, as to property conveyed to D. E. Thompson.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, DISTRICT JUDGE. *Decree entered modifying decree of district court.*

*Arnott C. Ricketts, Henry H. Wilson, Lionel C. Burr, Stephen B. Pound, Roscoe Pound, Amasa Cobb, Andrew E. Harvey, John H. Ames, Edward F. Pettis* and *Nathan S. Harwood,* for appellants.

*Charles O. Whedon, Charles E. Magoon, Genio M. Lambertson* and *Frank M. Hall, contra.*

HASTINGS, C.

This is a rehearing of the case which appears in 63 Neb. 130. In that opinion the nature of the case and the fact that it is here on appeal by the plaintiff and two defendants, the Dixon National Bank, and the People's National Bank of Rock Island, Illinois, sufficiently appear. As stated in that opinion, the appellants claim three funds out of which they are entitled to have their judgments against Mosher and Outcalt satisfied. The first, 200 shares of stock in the Lincoln Gas Company, transferred by C. W. Mosher January 23, 1893, to Chas. O. Whedon, and 150

shares transferred on the same day to C. E. Magoon. This transfer they claim to have been without lawful consideration, and the property, it is asserted, was at the commencement of this action applicable to the payment of the debts of C. W. Mosher and R. C. Outcalt. The second claim is, that the appellants are entitled to have applied in satisfaction of their several judgments against Mosher and Outcalt, certain shares of stock and dividends in the Lincoln Gas Company, as a result of garnishment proceedings against that company and its president, D. E. Thompson. It is also claimed, as stated in the former opinion, that certain lands and personal property transferred to D. E. Thompson by Mosher in December, 1892, or January, 1893, were fraudulently conveyed for the purpose of placing it beyond the reach of the grantor's creditors.

At the former hearing a conclusion adverse to the appellants was reached upon all three of these contentions. A rehearing was allowed on appellants' contention that their position had been misunderstood with reference to the first fund; that the facts relating to the second fund were not fully discussed nor quite accurately stated in the former opinion; and that the conclusion with reference to the third fund is contrary to the evidence.

A somewhat careful re-examination has been made of the entire testimony in this case and of the several rehearing briefs which have been filed. As to the first contention, that the stock transferred to Whedon and Magoon was without lawful consideration, and remains in their hands as a fund out of which Mosher's and Outcalt's creditors are at liberty to seek satisfaction for their claims, we can see no sufficient grounds for changing the conclusion reached before.

It does not seem necessary to discuss this part of the case at any length. The former opinion states that it was "practically conceded" that there was no actual fraud in the transfer, and holds that under our statute there is no constructive fraud. Counsel for the appellants now say that it was not "practically" but "fully" conceded that

there was no actual fraud in the transaction by which this stock was transferred to Whedon and Magoon. They say they were not attacking that transfer on the ground of any actual fraud, but that their claim was wholly based on section 7 of the statute of frauds, Compiled Statutes, ch. 32, sec. 7 (Annotated Statutes, 5956):

"All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same, shall be void as against the creditors, existing or subsequent, of such person."

They say that under the evidence in the case the contract of employment as attorneys, which the defendants Whedon and Magoon claimed was the consideration of the transfer, was an indefinite one; that it imposed a general care of the interest not only of Mosher but of his wife also; that under the testimony given by the grantees, they agreed to take no retainers against and to guard for all time the interests of Mosher and his wife; that such a contract is so indefinite in its character and is so completely in the nature of a trust for the grantor's benefit, that property conveyed in pursuance of it must be held to have been transferred without any lawful consideration. It is urged that only a small portion of the services which constitute the consideration for this stock had been rendered at the time the transfer was made.

It was conceded at the hearing that the value of the services rendered pursuant to this agreement was at least as great as that of the stock. It is conceded, as above stated, that the arrangement was made in good faith about January 23, 1893. This action was commenced in June, 1894. It does not appear from the evidence how much of these services had been rendered at the time this action was commenced. It is clear, however, that a very large proportion of them had by that time been performed.

It must be remembered that counsel are claiming that this action is to reach a fund held without fraud in trust for the debtor, Mosher. It is evident that it can be main-

tained as against Whedon and Magoon only so long as they are holders of such fund. It would seem to be entirely clear that where they have received property in good faith and without any intention to defraud, having performed services in consideration for it, they were liable to Mr. Mosher's creditors for only so much of it as they had not earned before the conveyance was attacked. There is no evidence in this record which would justify us in saying that at the commencement of this action Messrs. Whedon and Magoon had not earned all and more than the value of the stock they got. As there is no impeachment of their good faith, it would seem that this disposes of their part of the case in accordance with the former holding, so far as these 350 shares of stock are concerned.

Counsel, in claiming that only the services already rendered at the time the stock was transferred can be taken into account, are seeking to apply a rule which obtains only when there has been a fraudulent intent. Of course, where such an intent is present, the fact of the payment of a consideration will not sustain the transfer and the fraudulent grantee will be postponed in favor of an honest creditor; but where no bad faith is claimed, and no fraud is alleged nor attempted to be proved, counsel must take the situation as they find it at the filing of their petition. *Curtis v. Leavitt*, 15 N. Y. 9, 114-125. On that basis, there is nothing in this record to show that Mosher had at that time any interest in these funds whatever or that he had not received more than the stock was worth.

The claim of indefinitness in the contract certainly can have no weight. When performed, it would become definite by reason of such performance. So far as it was performed in good faith before the commencement of the action, the grantees would be entitled to be protected. On this record we can see no ground for changing the former conclusion in reference to these 350 shares of stock.

It seems entirely superfluous and unnecessary to follow the somewhat heated discussion by counsel of the cases cited and doctrines stated in the former opinion. That

opinion assumes, as here stated, that to overturn transactions where the consideration has been received, there must be established some actual fraud. This is conceded not to exist, and it nowhere appears in this record that the services actually performed by Whedon and Magoon in consideration of the receipt of this stock had not amounted to more than its value when plaintiff commenced this action.

Another question arises as to the stock of the Lincoln Gas Company and the dividends paid upon it. It seems clear that at the time the attachment proceedings by the three appellants began, Mosher had some interest in the Lincoln Gas Company stock. There seems no reason to change the conclusion reached at the former hearing that by the garnishment of the corporation, any interest then actually held by a debtor in its stock can be reached. On January 27, 1893, the plaintiff caused notices of garnishment to be served upon the gas company, through its president, D. E. Thompson. Mr. Thompson was also personally garnished. On June 25, 1894, a general judgment in favor of the plaintiff and against Mosher and Outcalt for $5,430.50 was rendered but no mention made of the attachment. In the meanwhile attachment had been issued to York and Hamilton counties and levied upon real estate, and on March 4, 1893, D. E. Thompson, as president of the gas company, answered that the books of the company showed at that time in Outcalt's name 945 shares and in Mosher's 2,580 shares. He also stated that dividends on these shares were payable to the parties in whose name the stock stood on the company's books, unless a written order to pay elsewhere was received. He also stated that various parties were claiming rights under portions of this stock. No order was entered against the garnishee, either personally or as president, nor was he discharged. On the rendition of judgment in 1894, as above stated, only a general judgment was entered. A motion had been made by the defendants to dissolve the attachment, which was on January 30, 1894, overruled. The same time with his answer

as president of the gas company Mr. Thompson also answered his own personal garnishment in the same action, denying that he had in his hands any property of Mosher.

As before stated, no order against the garnishees was ever taken, but immediately after the rendition of the judgment the present action was begun, asserting a liability on the part of both the gas company and Mr. Thompson, as garnishees; alleging that at the time of the garnishment Mosher and Outcalt were the owners of a large amount of stock in the gas company, which at that time stood in their names on the books of the company, and of which Mosher and Outcalt were still the owners, and asking that the gas company be required to disclose fully and account for all of such stock, as well as asking for general relief.

The evidence discloses clearly that dividends on a large portion of this stock accrued and were credited to C. W. Mosher and to R. C. Outcalt after service of garnishment. It shows that $1,079 were paid by the gas company to C. O. Whedon in 1895, upon an order from R. C. Outcalt, out of such dividends. It shows that there were paid in 1894, 1895 and 1896, to D. E. Thompson, on the order from C. W. Mosher, by the gas company, $8,327.66. It is contended on behalf of the appellants that this money came out of the funds which the gas company should account for; that these moneys should have been held for Mosher's creditors, and that the right of the plaintiff, by reason of the garnishment, to the funds, was not lost by reason of the failure to have an order entered against the garnishees, or by the failure to take more than a general money judgment, or by the issuance of an execution on that judgment and its return just prior to the inception of this action. The claim of the plaintiff is that it is entitled by means of this equitable proceeding to enforce its right gained by the garnishment.

It is urged on the other hand, that the attachment was waived by the rendition of the general money judgment and the issuance of an execution upon it, and that garnish-

ment was waived by the failure to procure any order from
the court.

We are led to conclude that the weight of authority does
not sustain the defendants' contention. It is true that in
Indiana it is held that taking a general judgment and is-
suing an execution upon it waives an attachment lien, and
the cases from that state are cited by the defendants. We
do not think, however, that such is the general holding, nor
that it is in accordance with justice. In this instance the
moneys were paid out long after the institution of this
action. The answers of the garnishees had not expressly
admitted any liability. Mr. Thompson in his testimony
expressly says that the money was subject to garnishment
as that of Mosher and that plaintiff's counsel, if they had
known, would have obtained it.

The use of an equitable remedy to enforce payment from
garnishees is expressly upheld in this state. *Hargreaves v.
Tennis*, 63 Neb. 356.

We conclude that the gas company is liable for these
moneys paid on the orders of Mosher and Outcalt during
the pendency of this action, on account of dividends upon
its own stock. We are not satisfied from this record that
appellants are entitled to anything more.

It seems clear that in commencing this action plaintiff
assumed the burden of establishing Outcalt's and Mosher's
ownership of this stock, or the failure of any third party
to claim it before the garnishees' liability for the stock
itself would attach. It is contended that the record shows
that 100 shares of it have never been demanded by any-
body. The record shows in various places statements by
the officers of the company that all of this stock is claimed
by other parties. It seems probable that there is a portion
as to which the record does not disclose that any specific
person is claiming it. We are not able to conclude from
this fact alone, however, that the trial court was wrong
in finding that the stock itself had all been transferred.
But these unclaimed dividends that were paid on the
debtor's order pending this action could and should have

been applied to their debts, if either this action or the garnishment proceeding gave any lien.

There remains still to be considered, with reference to this stock and dividends, the situation of the appealing defendants. The Dixon National Bank had garnished the gas company on the same day as plaintiff, but at an earlier hour as shown by the sheriff's return. The same is also true as to the People's National Bank. The answers of the garnishees were to be taken as applying to each of the three cases. Motion was made to dissolve the attachment and to quash the garnishment service in each of these cases, which was overruled. In June, 1894, judgment was rendered for each of the appealing defendants, and an order entered that the attached property, including 2,580 shares in the capital stock of the gas company issued to C. W. Mosher, should be sold. Order of sale was issued on this stock, and the sheriff sold it to one W. Q. Bell in August, 1894. W. Q. Bell was the agent of D. E. Thompson in the purchase. Thompson borrowed the $2,000 for which it was sold, and gave his note. This note was renewed several times and was finally paid by Mosher's instructions, from dividends which the gas company had passed to his credit.

At the former hearing it was thought that this transaction being an absolute sale to W. Q. Bell and being made under garnishments prior in time to that of plaintiff, appellants could none of them claim any right or interest in this gas stock. We are obliged now to conclude that this is not true. Doubtless the defendants who procured this sale are bound by it. We do not see how they can claim by virtue of their garnishment any interest which did not pass by this sale. As to the plaintiff, no connection with the sale appears, and its rights as garnishing creditor are not affected except to the extent that the money applied by means of that sale to the doing away with the prior liens of the appealing defendants must be credited to the purchaser. The $2,000 were paid out in satisfaction of the two liens upon the Mosher stock and dividends. The fund has been diminished to that extent,

50

and the gas company should receive credit for that much and should account to the plaintiff for only the remainder. So far as the garnishment proceedings are concerned, the appealing defendants have no rights as against this stock whose sale they procured. But having joined in this proceeding we think that, after the satisfaction of plaintiff's judgment, they would be entitled to have the remainder of these dividends applied on their judgment. These dividends were paid out pending this action brought to charge the gas company as trustee for Outcalt's and Mosher's creditors.

The conclusion reached at the former hearing as to the transfers of real estate and personal property by Mosher and Outcalt to D. E. Thompson in December, 1892, and January, 1893, is assailed on the ground that the deeds, while absolute on their face, were given as security for the payment of a note and that the note was without consideration; also that the grantee in these deeds immediately set about disposing of the lands. This is claimed to be sufficient in connection with the other transactions between the parties to conclusively establish the fraudulent character of these conveyances. This would have to be granted if the want of consideration were established. It appears that the consideration was a note given in November, 1891, for shares in the Capital National Bank. The claim of no consideration rests upon the proposition that the shares in the Capital National Bank were worthless in 1891, and that all the parties to the transaction knew it. This, in turn, rests upon the statement of Kent K. Hayden, receiver of the Capital National Bank, that he had examined the books and assets of the bank, and in his opinion it was insolvent at that time; that is, that in November, 1891, the whole value of the bank's assets was not equal to the amount of its liabilities. This in the light of subsequent events is no doubt true, but it appears that at that time the stock was at twenty-five per cent. premium on the street. The note was for stock at that price and was secured, when given, by a deposit of stock in the Lin-

coln Gas Company. Some holdings to the effect that directors are presumed to know the condition of their bank are cited, and the fact appears that both Mosher and Thompson were directors of the bank in November, 1891.

No doubt, as against one who has a right to rely upon his official statement, a director is presumed to know the condition of his bank and the falsity of his statement if it is false. The official knowledge which a director may be presumed to have should be taken into consideration in a case like the present one. It doubtless was. Otherwise, the trial court would not have allowed the fact in evidence. But in this case it is not conclusive. Mr. Thompson says that he retired from the bank owing to a disagreement with Outcalt, and that the note was taken for the market price of his stock. The fact that he had collateral security consisting of $40,000 worth of gas stock, a fact attested by his own oath and those of Mr. Mullen and C. W. Mosher, is not denied.

It is true that the taking of security by means of a deed absolute on its face is a badge of fraud, especially if the security is excessive. In this case there is no claim of the latter, except as it is claimed that the indebtedness was fictitious; and the fact that the deeds are in terms absolute is, like the knowledge of a bank director, a circumstance to be considered. The court, in our opinion, was warranted in believing that the sale of the bank stock took place as claimed in 1891; that its price was secured by collateral which was given up in exchange for real estate and personal property just before the failure. The consideration is sufficient to support the transaction if the latter was made in good faith. We are by no means clear that the trial court was wrong in finding the exchange was made in good faith, and we adhere to the conclusion formerly reached, that this part of the decree is sustained by the evidence.

As only these three parts of the case are touched upon in the rehearing application, it is not necessary to discuss the remainder of the decree.

It is recommended that so much of the trial court's findings and decree as relate to the ownership of the dividends on stock in the Lincoln Gas Company paid to Charles O. Whedon and D. E. Thompson, on orders of Outcalt and Mosher, be reversed, and that said gas company and D. E. Thompson be required to account for and pay over the same, except the sum of $2,000 paid on the Bell purchase of said stock, said Thompson and said company to be both liable jointly for such sums of said dividends as Thompson received, and said Charles O. Whedon to be jointly liable with said company for the dividends received by him on Outcalt's order; that decree be entered in this court in favor of said plaintiff against said Lincoln Gas Company, defendant, and D. E. Thompson, for the sum of $6,327.26 paid to D. E. Thompson, of dividends credited to C. W. Mosher and subsequently paid over by Thompson on Mosher's order, and against said Lincoln Gas Company and Charles O. Whedon for the further sum of $1,079 paid out on the order of R. C. Outcalt, with interest at seven per cent. per annum from the date of the decree of the district court herein, and that the proceeds of such payment be applied, first, in payment of costs incurred by plaintiff herein; and, second, to the satisfaction of plaintiff's judgment and interest, and the surplus, if any, *pro rata* upon the judgments of the two appealing defendants.

KIRKPATRICK, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, it is ordered by the court that a judgment be entered in this court in conformity to the foregoing opinion, and special recommendations therein contained.

JUDGMENT ACCORDINGLY.

The following opinion on rehearing was filed June 9, 1904. *Judgment below affirmed:*

1. **Corporation:** GARNISHMENT. A stockholder's interest in a corpora-

tion, and in all of its property and rights, is represented by his stock. A levy upon the stock of a debtor by garnishment of the corporation pursuant to the statute will impound dividends upon the stock declared while the proceedings are pending.

2. ———: ———: Bona Fide Purchaser. If the debtor has sold or pledged the stock in good faith before the levy, the right of such *bona fide* purchasers will not be affected by the levy, even though, by the books of the corporation, the stock appears to be the property of the debtor and is so regarded by the corporation.

3. Appeal: Errors Not Considered. In appeals to this court in equity cases, the findings of the trial court must stand or fall upon the pleadings and evidence contained in the record. Errors of the trial court in receiving or rejecting evidence, or upon questions arising upon the pleadings, can not be corrected upon such appeal.

Sedgwick, J.

At the first hearing in this case, upon the opinion of Mr. Commissioner Day, the decree of the district court was affirmed. 63 Neb. 130. At the second hearing, and upon the opinion of Mr. Commissioner Hastings, the decree of the district court was modified, and a decree entered in this court against two of the defendants. *Ante,* p. 713. Upon the motion of these defendants for rehearing further argument was had before the court. The issues are somewhat complicated and the evidence is very voluminous. Upon an examination of this record, we find no cause to doubt the correctness of the conclusions reached upon the several hearings, unless it be upon the matters suggested in the seventh paragraph of the syllabus of the opinion upon the second hearing. The trial court found: "That prior to the commencement of such proceedings at law by the plaintiff, and the several cross-petitioners herein, wherein garnishment proceedings were had, the said Charles W. Mosher and R. C. Outcalt had transferred, assigned and delivered all of the stock appearing by the books of the said several companies as belonging to them, either by actual sale as collateral security or in manner as is herein found, and were not the owners of any stock in the said several companies at the time of the institution of the proceedings at law by the plaintiff and the several

cross-petitioners, as alleged in their several petitions."
It is said in the opinion that this finding of the trial court
is supported by the evidence. It is also said that, the evi-
dence discloses clearly that dividends on the stock ac-
crued after the garnishment, and were credited to Mosher
and Outcalt, and that $1,079 of this fund were paid to
Whedon on the order of Outcalt, and $8,327.66 were paid
to Thompson upon the order of Mosher out of this fund.
It appears that these dividends had been credited by the
corporation upon its books to Mosher and Outcalt, and
that the corporation had retained the dividends during the
pendency of the litigation; and it was thought that such
part of these dividends as had not been claimed by other
parties during the pendency of the legal proceedings, and
had been paid out upon the orders of Mosher and Outcalt,
should have been applied upon their debts. It was accord-
ingly recommended that judgment be entered in this court
against the parties who received this money upon these
orders. Is this conclusion correct?

It is insisted in the briefs that dividends declared upon
the stock after the attachment and garnishment proceed-
ings would not be bound thereby. Very many authorities
are cited upon the proposition that "the validity of an at-
tachment depends upon the state of facts existing at the
time when levied. It can not reach any liability of the
garnishee accruing after the service of process upon him."
These authorities are not in point upon the question pre-
sented.

A stockholder's interest in a corporation and in all of
its property and rights is represented by his stock. There
can be no question that the levy upon the stock by the
garnishment of the corporation pursuant to the statute
will impound the whole interest of the stockholder in the
property and rights of the corporation, and that the right
to receive dividends goes with the stock. We are satisfied
with the discussion of this question by Mr. Commissioner
DAY in the first opinion herein. We think he has cor-
rectly construed the statutes quoted and properly applied

the principles announced in the authorities cited by him. His conclusion, that the interest of Mosher in the stock, whatever it might be, was transferred to Bell under the foreclosure sale, does not affect the result, because, as was shown in the opinion upon the second hearing, this purchase was made at a nominal price, when compared with the face value of the stock purchased, and was made from dividends which had been declared upon the stock itself while these proceedings were pending. Such purchase would not change the rights of the parties in the stock as already fixed by the garnishment proceedings, or by *bona fide* transfers of the stock by Mosher and Outcalt before the proceedings were begun. We have no doubt that the garnished corporation from the time of service of the notice upon it became liable to account to the attaching creditors for the stock then actually owned by Mosher and Outcalt and its proceeds. *National Bank of New London v. Lake S. & M. S. R. Co.*, 21 Ohio St. 221. It is equally true that parties to whom the stock had been sold or pledged in good faith as collateral security prior to the garnishment proceedings would be entitled to the stock and the proceeds thereof as against the attaching creditors. The question is whether the stock of the Lincoln Gas Company that stood in the name of Mosher and Outcalt upon the company's books at the time of the commencement of the garnishment proceedings had been before that time sold or pledged in good faith to other parties. As before stated, the trial court found that it had been. Is this finding sufficiently supported by the evidence? If it is, it follows from the foregoing suggestions that the judgment of the district court is correct. If not, then such part of the stock as actually belonged to Mosher or Outcalt at the commencement of the proceedings should be applied upon the claims of these creditors, including the dividends since declared upon the stock.

It was sought in the petition to charge the gas company as trustee of the stock belonging to Mosher and Outcalt. It was alleged that other parties were claiming the stock;

that their claims were fictitious and fraudulent; and that the claims were really made in the interest of Mosher to enable him to obtain the value of the stock for his own use. The plaintiff asked that the gas company be required to show who the parties were making these claims, and what their interests, if any, really were in the stock. This feature of the petition does not seem to have been afterwards insisted upon. The gas company's answer to these allegations was a general denial. No attempt was made by the gas company in its pleadings to show who were, in fact, the owners of the stock except through sale to Mr. Bell. It was claimed in the answer that this sale to Mr. Bell transferred all of the interest of Mosher and Outcalt in the stock. The issues being in this condition, it was no doubt competent for the plaintiff to examine the officers of the gas company and other witnesses fully in regard to the ownership of the stock. This the plaintiff sought to do, but objection was made and sustained by the court. The result is that the evidence upon this point is very incomplete and unsatisfactory. This error of the court may have resulted in great injury to these plaintiffs, but it can not now be corrected upon this appeal.

Under our practice, established by a long line of decisions, upon appeals in equity the findings of the trial court must stand or fall upon the pleadings and evidence contained in the record. The party complaining of the decree of the trial court must choose his remedy, whether by appeal or by proceedings in error. An error of the trial court in receiving or in refusing evidence can only be corrected upon proceedings in error. If this rule of practice leads to injustice in many cases, it remains to the legislature alone to supply the remedy.

Undoubtedly, the general rule is, as stated in the last opinion, that "in commencing this action, plaintiff assumed the burden of establishing Outcalt's and Mosher's ownership of this stock." The plaintiff insists that the burden of rebutting that presumption is cast upon the defendant. Several cases are cited upon this point, one

being *Turnbull v. Payson,* 95 U. S. 418, from which the following quotation is made in the brief: "Where the name of an individual appears on the stock book of a corporation as a stockholder, the *prima facie* presumption is that he is the owner of the stock, in a case where there is nothing to rebut that presumption; and, in an action against him as a stockholder, the burden of proving that he is not a stockholder, or of rebutting that presumption, is cast upon the defendant." This rule obtains in an action where the claimant of the stock is a party to the suit. No doubt upon a direct issue between two parties, both claiming to own the stock, the *prima facie* presumption is that the stock stands upon the company's books in the name of the real owner; but when that presumption is overcome, the burden of proof would still be upon the plaintiff to show his ownership in the stock.

In *Barker v. Osborne,* 71 Me. 69, it was said: "Where, by the disclosures of an alleged trustee, it appears, that at one time prior to the service of the writ upon him, he held funds of the principal defendant, which would be attachable in that suit, the burden is upon the trustee to show, that, prior to the service, he had expended such funds for the defendant's benefit, and this can not be done by doubtful, indefinite, and sweeping statements, with an omission of details and particulars." In that case the trustee relied upon his own act to relieve him of liability. He was therefore in position to know and, if true, to sustain his allegation. When the corporation is garnished, the plaintiff claiming that it holds the stock for the debtor, it is sufficient answer for the garnishee to show that there is reasonable ground to believe that some third party, who is not a party to the litigation, is the owner of the stock, and that the corporation will be liable to such owner thereon. In an action in equity to determine the question of the ownership of the stock, and to appropriate it in satisfaction of plaintiff's claim, all persons claiming the stock should be made parties. If the claimants are unknown, or the corporation as garnishee attempts to disguise the facts and

avoid plaintiff's lien, as is alleged in this case, the court would, no doubt, when the facts were discovered, allow new parties to be brought in and determine that question after full investigation. We are not satisfied that the evidence in this record fails to support the finding of the trial court. There are many circumstances disclosed in the evidence bearing more or less directly upon the question involved. The fact that the dividends were credited to the accounts of Mosher and Outcalt upon the company's books while these proceedings were pending, is entitled to but little weight. The ownership of the stock being in litigation, and the record of the stock being kept in the names of Mosher and Outcalt, and it being the duty of the company to hold the dividends until the ownership of the stock was determined, the fact of entering the dividends in the same account with the stock itself, would not be conclusive that the corporation, at the time, considered that the stock belonged to Mosher and Outcalt; nor would their conclusion in regard to the matter be binding upon the owners of the stock, and so protect the corporation as garnishee.

Time and space will not admit a complete review of the facts disclosed by this record bearing more or less directly upon this point. It must be conceded that the record is unsatisfactory. It may be that the plaintiff, by erroneous rulings upon the trial, has been deprived of an opportunity to frame the pleadings and furnish the evidence necessary to sustain the burden which the law casts upon him. These errors can not now be corrected in this form of procedure, for the reasons above indicated.

The findings of the trial court being supported upon the pleadings and the evidence preserved in the record, the decree properly entered thereon must be sustained. The judgment entered in this court is vacated, and the decree of the district court

AFFIRMED.