EDWIN ADAMS v. NELS O. OVERBOE and Others.[1]

August 7, 1908.

Nos. 15,672—(87).

**Mortgage not Fraudulent.**

A chattel mortgage given by the defendant in an action to his attorney to secure a note then given for professional services to be rendered in attempting to get the attachment dissolved *held*, under the evidence, not fraudulent.

[1] Reported in 117 N. W. 496.

**Action for Conversion Against Sheriff's Sureties—Limitation.**

After the note and mortgage were given the attachment was dissolved. On appeal taken to this court the order was affirmed. A bond was given and the sheriff retained possession of the property while the appeal was pending. Before the appeal was determined judgment was entered in the main action, and the sheriff on December 16, 1898, sold the attached property under execution. Before the sale was made the mortgagor demanded possession of the property, and thereafter brought an action for conversion against the sheriff, and judgment was entered against the sheriff on July 25, 1904. It was not paid, and on September 7, 1904, this action was commenced against the sureties on the sheriff's official bond. *Held*:

(a) The chattel mortgage was valid, subject to the rights of the attaching creditor and a prior mortgage to which it was in terms made subject.

(b) When the attachment was dissolved, the rights of the mortgagee were then subject only to the prior mortgage.

(c) The judgment of the court affirming the order dissolving the attachment determined that the attachment was invalid from the first, although the sheriff was entitled to the possession of the property while the appeal was pending. Such possession did not enable him to transfer the lien of the attachment to the execution and thus cut out the rights of the mortgagee.

(d) The property was converted by the sheriff when the sale was made under the execution, and, as the action against the sheriff was commenced within three years thereafter (section 4077, R. L. 1905), it was not barred by the statute of limitations.

(e) Under section 4076, R. L. 1905, an action against the sureties upon an official bond may be brought within six years after the expiration of the term of office of the officer. This action was, therefore, not barred by the statute.

Action in the district court for Clay county against defendants, sureties on a sheriff's official bond, to recover $167.59, the amount of a judgment obtained by plaintiff against the sheriff of Clay county, for the conversion of certain oats upon which plaintiff held a chattel mortgage. The case was tried before Baxter, J., who found in favor of defendants. From an order denying plaintiff's motion to set aside the findings and for a new trial, plaintiff appealed. Reversed and new trial granted.

*F. H. Peterson* and *Edwin Adams*, for appellant.

*C. A. Nye*, for respondents.

ELLIOTT, J.

This action was brought by Edwin Adams, as the owner of a certain chattel mortgage, against the sureties on the bond of William J. Bodkin, sheriff of Clay county, to recover damages for the conversion of certain grain, which was levied upon by Bodkin as the property of one Marquette. The trial court found that the plaintiff's mortgage was fraudulent, and ordered judgment for the defendants. The appeal is from that order.

The essential facts are undisputed. On September 8, 1898, Leslie Welter, to whom Marquette was indebted, commenced an action to collect his claim, and caused an attachment to be levied by the sheriff on fifteen hundred fifty three bushels of oats then in a granary on Marquette's farm, and also upon one hundred sixty bushels of wheat then in an elevator at Baker station. The oats only are involved in this action. Immediately after making the levy on the oats, the sheriff removed them from the granary and stored them in the elevator along with the wheat. Marquette, claiming that he had a good defense to the action and that the writ of attachment had been improvidently issued, employed Adams, who was an attorney at law, to defend the action and attempt to have the attachment dissolved. Being without money to pay his attorney, Marquette, on September 9, 1898, gave Adams a note for $100.35, due December 1, 1898, and secured its payment by the execution and delivery of a chattel mortgage upon certain grain not involved in this action. Subsequently, on September 16, 1898, the mortgage was satisfied, and in lieu thereof a mortgage was given upon the grain, which was then held by the sheriff under the attachment. This mortgage was duly filed. After having been thus employed, and his fees secured, Adams commenced proceedings to have the attachment vacated. On September 24, 1898, the district court filed an order dissolving the attachment. From that order an appeal was taken to the supreme court. The appeal was not prosecuted, and on January 3, 1899, the order of the trial court was affirmed. While the appeal was pending, and on December 2, 1898, judgment was entered in the principal action in favor of Welter and against Marquette for $195.47, and the sheriff, who had retained possession of the oats, a stay bond having been given in the appeal, then levied on the oats, and on December 17, 1898, sold the same under an execution is-

sued on the judgment. Adams made a formal demand on the sheriff for possession of the oats, and, this being refused, he on December 15, 1898, commenced an action against the sheriff to recover damages for the conversion of the oats. In this action he recovered judgment for $169.59. The judgment not having been paid, on September 7, 1904, this action was commenced against the respondents, as sureties on the sheriff's bond, to recover damages for the conversion of the oats. The jury returned a verdict against the defendants, but this was set aside and a new trial ordered. Thereafter the case was tried and submitted to the court upon the record made on the first trial, and the court made findings of fact and conclusions of law, and thereon ordered judgment for the defendants.

1. The court found that "the plaintiff's mortgage was not given in good faith, but in fraud of creditors of the said Marquette, and especially for the purpose of defrauding said Welter." There was no evidence of actual fraud on the part of Adams, and we are unable to find anything in the circumstances disclosed by this record which justifies the conclusion that the mortgage was not taken in good faith to secure a valid debt. Marquette may have been willing to spend some of his property in defending the action brought by Welter, and it may be that he preferred that the property should go for the payment of other creditors. But his wishes, desires, and intentions cannot be charged to Adams, unless he was a party to an attempt to defraud Marquette's creditors. Marquette was entitled to employ counsel and defend the action which had been brought against him by Welter. The result showed that the attachment had been improperly issued, and that Marquette was justified in making an effort to have it discharged. He had no money to pay an attorney. Adams was not required to work for nothing, and no one can properly question Marquette's right to give him a note and secure its payment by a mortgage on the grain, subject to whatever rights had been acquired by the levy of the attachment. Adams took his mortgage as security for a legitimate debt, but, of course, with knowledge of the attachment.

We attach no particular importance to the fact that the first mortgage given did not cover this grain, and that the present one is the result of a change of the security. If Marquette had the right to give a mortgage on this grain on September 8, he had the same right

on September 16. Welter had not obtained judgment, and, unless his attachment was valid, he stood in no better position with reference to any particular property than did the other creditors of Marquette. When the attachment was dissolved Adams' mortgage became a lien, subject only to the lien of a mortgage which had been given to another party by the name of Canfield, and it could not be cut out by an execution issued on a judgment entered after the filing of the mortgage. The bond given on the appeal justified the sheriff in retaining possession of the property, but when the order dissolving the attachment was affirmed by this court it operated as of the date of the order of the district court, and determined that the writ had been illegally levied, and therefore no rights could have been acquired under it. When the execution sale was made Adams had a good and valid mortgage on the grain, and the sale thereof, after proper demand, amounted to a conversion of the grain, and he was entitled to recover damages resulting therefrom.

2. The respondents contend that the appellant's claim was barred by the statute of limitations. The action against the sheriff was commenced on December 11, 1901, and, under section 4077, R. L. 1905, if the conversion occurred, as respondents claimed, on September 9, 1898, when the sheriff removed the oats from the granary to the elevator, it was barred. But the appellant's mortgage was not then in existence. It was taken on September 16, and was subject to the lien of the attachment, which disappeared when the attachment was dissolved. The conversion occurred when the sheriff sold the grain under the execution on December 17, 1898. The action was brought against the sheriff within three years from the time when the cause of action arose, and was, therefore, not barred by the statute. Willius v. Albrecht, 100 Minn. 436, 437, 111 N. W. 387, 112 N. W. 862; Litchfield v. McDonald, 35 Minn. 167, 28 N. W. 191.

The present action against the bondsmen was not commenced until September 7, 1904; but the statute provides that the six-year limitation shall apply to actions "against sureties upon the official bond of any public officer, whether of the state or of any county, town, school district, or municipality therein; in which case the limitation shall not begin to run until the term of such officer for which the bond was given shall have expired." R. L. 1905, § 4076 (8). As the action

was commenced within six years after the conversion of the grain by the sheriff while he was in office, it must have been brought within six years of the expiration of his term of office. While this may create the somewhat anomalous situation of a right of action existing against the sureties on an official bond after it has been barred as against the officer, the language of the statute is too plain to admit of construction. The possibility of this situation arising is one of the burdens which the bondsmen assume.

The order of the trial court is therefore reversed, and a new trial granted.