CHARLES HANNEMAN et al., Appellants, v. OSCAR P. OLSON et al., Appellees.

No. 39302.

DECEMBER 14, 1928.

REHEARING DENIED DECEMBER 13, 1929.

*John A. McKenzie* and *L. Dee Mallonee*, for appellants.

*Smith, Schall, Howell & Sheehan* and *J. A. Graham*, for appellees.

ALBERT, J.—Commencing with the year 1920, the firm of Smith, Schall, Howell & Sheehan, a firm of Omaha attorneys, was employed by the defendant Oscar P. Olson in a line of litigation consisting of several cases that had been brought by plaintiffs and others against him, growing out of land transactions. In June, 1921, the plaintiffs brought suit against the Olsons in the district court of Douglas County, Nebraska, claiming damages on a land trade in the sum of $44,000. An attempted settlement was reached in this case in November, 1921, and the case was dismissed. Thereafter, a new petition was filed, asking a judgment in the sum of $63,000. A verdict was rendered by a jury against Olson on the trial of that case in the sum of $29,000. A motion for a new trial was granted, and the case was again tried, resulting in a verdict against Olson for $43,000, on September 22, 1922. The case was then appealed to the Supreme Court of Nebraska, which court affirmed the case, and later overruled a petition for rehearing, and mandate issued from that court on the 6th day of May, 1926. During all of this time, Olson paid to the said firm different sums of money, and also, to secure their fees, turned over to them what is known in the record as the "McGill" note and mortgage. This was a second mortgage, which, upon investigation, was found to be worthless. On June 16, 1922, Olson also turned

over 160 acres of land located in North Dakota, free of incumbrance, and valued at $3,500 to $4,000. On February 9, 1924, Olson delivered to said firm a quitclaim deed to Lots 3 and 4 in Block A, town of Audubon, Iowa, estimated in the record by witnesses to be worth $2,400 to $2,500, and this is the deed which lies at the foundation of this action.

Oscar P. Olson had a mortgage on this Audubon property, and the same was foreclosed as against this and certain other property covered by the mortgage. At the foreclosure sale, V. M. Olson, wife of Oscar Olson, purchased the property, and the sheriff's certificate was issued to her. One W. A. Hanson wished to purchase certain other property involved in this mortgage foreclosure, aside from the said Lots 3 and 4, and V. M. Olson assigned her certificate of purchase to the said Hanson, who took a deed to all of the property from the sheriff, and then made the quitclaim deed involved herein. Hanson executed this deed, with the grantee's name in blank, and delivered the same to Oscar Olson, who took it to the office of said attorneys, and, under his direction, the name of William A. Schall, a member of said firm, was inserted as grantee. This quitclaim deed was dated February 9, 1924, and recorded June 30, 1924. In the intermediate time, the present action had been started against Oscar P. Olson and V. M. Olson, and on the filing and recording of said quitclaim deed, the plaintiffs made Schall a party defendant.

Sheehan, a member of said firm of attorneys, filed answer for Schall, in which, among other things, he alleged that Schall paid for said property a good and valuable consideration. Later, Schall, on discovering the answer that had been filed for him, filed an amended and substituted answer, admitting that he received a quitclaim deed covering the property described in plaintiffs' petition, but alleged that said deed was delivered to him as security for the payment of a bona-fide indebtedness for attorney's fees for services of his firm; that said deed was taken in trust for the benefit of said firm, as a matter of convenience, and was for full value, and taken in good faith, for the purpose of securing a bona-fide indebtedness owed by Olson to said firm for services rendered and to be rendered Olson in good faith; that the value of said services was in excess of

$10,000, over and above all sums received by said attorneys from Olson. He prayed that plaintiffs' petition be dismissed.

Two propositions are urged by the appellants. The first is that the giving of an absolute deed of conveyance which was intended to operate as a mortgage only is a badge of fraud as against the grantor's creditors, citing *Fuller v. Griffith,* 91 Iowa 632; 27 Corpus Juris 490. The second is that the failure of the grantee to file a deed from an insolvent debtor is a badge of fraud, citing *Central City Sav. Bank v. Snyder* (Iowa), 176 N. W. 695 (not officially reported); 12 Ruling Case Law 483—487.

Appellees in fact concede the correctness of the general principle of law stated above, but say that the failure to record a deed does not render it fraudulent in law as to creditors where no fraud is intended and no one is misled (citing *Brown v. Bradford,* 103 Iowa 378; *Ritz v. Rea,* 155 Iowa 181); and further say that the giving of an absolute deed of conveyance which is intended as a mortgage is a badge of fraud against the grantor's creditors, but will be upheld if no fraud was intended. This is the Iowa rule, laid down in the following cases: *Fuller v. Griffith,* supra; *Ritz v. Rea,* supra; *Cathcart v. Grieve,* 104 Iowa 330; *Brown v. Bradford,* supra; *Crowley v. Brower,* 201 Iowa 257.

The substance of the contention of both parties results in a statement of the rule under our cases, as follows:

The withholding of a deed from record for an unreasonable length of time is a badge of fraud. Equally, the giving of an absolute conveyance when the intention is that it shall be security is also a badge of fraud; but neither, in itself, is sufficient to warrant the setting aside of the conveyance, and both of the situations are subject to the rule that, if it is shown that there was no fraud intended, and the deed was received in good faith, it is not a fraud on creditors such as would warrant the setting aside of the conveyance. This is the substance of all of our holdings on this proposition, and is a statement of the rule which is quite general in all states.

The appellants recognize the well known rule announced in the case of *Barks v. Kleyne,* 198 Iowa 793, that a creditor may receive a preference if he acts in good faith; but if the benefited creditor had knowledge of the fraudulent intent of

the debtor, and participated or co-operated therein, with the intent to hinder, delay, or defraud creditors, then the conveyance should be set aside; otherwise, it should be permitted to stand.

That an insolvent debtor has a right to employ attorneys to defend his estate and himself, and to transfer property to such attorneys in payment of such contemplated services, where it is reasonable and done in good faith, is held not to be a fraud upon the creditors. *Farmers' & Merch. Nat. Bank v. Mosher,* 63 Neb. 130; *Yeiser v. Broadwell,* 87 Neb. 583; *Morrell v. Miller,* 28 Ore. 354 (43 Pac. 490).

With the law thus well settled, we turn to the facts.

There is no dispute that the defendant firm of attorneys performed long and arduous services for Olson. In the various litigations they handled for him, there was something like $75,000 or $80,000 involved. He not only had this litigation above referred to, but the plaintiffs, in their efforts to have him uncover his property rights, on several occasions, had him cited before the Douglas County court, and in one instance, he was arrested, and brought before the court, and an appeal was taken to the Supreme Court of Nebraska on an order that he submit himself to examination as to the whereabouts of his property and the disposition he had made thereof. The plaintiffs' case against Olson above referred to had to do with the exchange of Colorado land, and required several trips to Colorado to investigate the same and take depositions. Evidence in behalf of Schall shows that one member of the firm put in about six months' continuous time in the service of Olson; that other members devoted time and attention to the preparation of the various cases for trial, briefing the same, and submitting the various appeals to the Supreme Court of Nebraska. A statement of the account with Olson, as kept in the books for the firm, is set out as an exhibit in the case. It shows that the firm called upon Olson at various times to advance expense money in the preparation of his various cases over which the said firm had supervision, and also to cover printing bills in the Supreme Court of Nebraska, etc. It is also shown in the record that the firm had for collection a certain note given by one Fisher, and that about $3,000 was collected at various times on said note, and the same was turned over to Olson. Aside from these items

of collection on the Fisher note, the amount actually expended by said firm in relation to all of these pieces of litigation was more than the amount paid in by Olson to the firm. Aside from two charges amounting to $800, no fees whatever have been paid by Olson to this firm for all of their services.

Some complaint is made because of the fact that Olson paid the taxes and received the rent on the North Dakota land, and also received the rent, or part of it, from the Audubon property. This is in accord with the contention of Schall that they held only titles to these properties as security.

The real question that is decisive of this lawsuit is whether or not this firm of attorneys was acting in good faith in accepting this security for their services, or whether they took title to this property with intent to aid or co-operate with Olson to put the property out of the way of his creditors. The burden of proof was upon the plaintiffs to show that this conveyance was made to the Schall firm with intent to hinder, delay, and defraud the creditors of Olson, and that the Schall firm participated with Olson in this intent. No benefit will be conferred upon the litigants or upon the profession at large by a further detailed recitation of the facts in this case. Suffice it to say that, under the record, we reach the conclusion, as did the district court, that this firm had the right to take this security, and that they did so take it in good faith, and did not intend in any way to aid Olson in defrauding his creditors, but simply exercised their legal right to protect the firm for services already performed and to be performed at the time the deed was taken.

We find no error in the record, and the case is—*Affirmed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.