455 P.2d 281

John J. HAY and Gertrude S. Hay, husband and wife, Appellants,

v.

Bernard C. DUSKIN, Appellee.

No. 1 CA–CIV 799.

Court of Appeals of Arizona.

June 9, 1969.

Snell & Wilmer, by Robert Bernstein, Daniel E. Nastro and Thomas E. Parrish, Phoenix, for appellants.

Kanne, Bickart & Crown, by Barry G. Crown, Phoenix, for appellee.

MOLLOY, Judge.

In this appeal, judgment creditors challenge a summary adjudication establishing the priority of a mortgage given by allegedly insolvent judgment debtors to an attorney to secure payment for future legal services over the lien of a previously rendered but subsequently recorded judgment.

Appellants Hay obtained a $110,082.53 judgment against Jack W. Londen and Doris M. Londen, husband and wife, on August 9, 1966. An abstract of this judgment was recorded in the office of the Maricopa County Recorder on December 6, 1966. *See* A.R.S. § 33–961. The abstract, dated December 1, 1966, indicates partial satisfaction of the judgment, with an accompanying reference to "Execution on Return filed November 16, 1966." The balance remaining due on the judgment is stated to be $50,321.80.

On November 2, 1966, Jack W. Londen and Doris M. Londen executed a realty mortgage on land in Maricopa County in favor of Ira S. Broadman, their attorney and the attorney for at least two corporations in which the Londens directly or indirectly held a dominant interest. This mortgage was in the amount of $3,185.45, and secured a note executed by Jack W. Londen individually and as president of Arizona Trust Life Insurance Company, representing the amount due Broadman for legal services *previously* rendered. The

validity and priority of this mortgage is not here contested by appellants.

The next day, November 3, 1966, the Londens executed another mortgage on the same property to Broadman. This later mortgage was in the amount of $5,000, and secured a note in the same amount payable in full ninety days after date which was also executed by Jack W. Londen individually and as president of Arizona Trust Life Insurance Company. Broadman's deposition on file in this cause reveals that the note and mortgage were given in connection with a "retainer" agreement entered into between Londen and Broadman under which Broadman undertook to represent the Londens' interests in an involuntary bankruptcy proceeding seeking a reorganization of the Londen Publishing Company, a corporation in which United Trust Company wholly owned by the Londen family was an 80 per cent shareholder. The following excerpts from Broadman's deposition indicate the general nature of the retainer agreement:

(On examination by Mr. Bernstein):

"How about the note dated November 3rd?

\*    \*    \*    \*    \*    \*

"A  On that date, he [Jack W. Londen] was newly served with another pending bit of litigation which was rather involved, involving some of his business interests and he asked me if I would handle this matter. At that time I insisted on a retainer of $5,000. He gave me the \* \* \* note to liquidate that retainer fee that I was asking for at that time before I embarked on the new bunch of litigation.

\*    \*    \*    \*    \*    \*

(On examination by Mr. Huffsteter):

\*    \*    \*    \*    \*.    \*

"A  To be absolutely correct, my discussion with Mr. Londen was, 'There is new litigation commencing which I have no idea what it will involve, but I am sure it will involve something in excess of $5,000. I insist upon a $5,000 retainer as against my hourly charges,' and I

would not have undertaken the additional litigation because he already owed me $3100 or close to $3200 \* \* \*."

Broadman also testified that he and Jack W. Londen had agreed that Londen and Arizona Trust Life Insurance Company would be jointly and severally liable for all services performed by Broadman in behalf of the Londens' interests, regardless of the extent to which Jack W. Londen personally was a party to the litigation and regardless of which of their controlled corporations was involved in any particular litigation. Both of the described mortgages were recorded on November 7, 1966, 23 days before the recording of appellants' judgment.

On June 13, 1967, Broadman assigned the mortgages to Bernard C. Duskin, appellee. This was done, according to Broadman, so that they could be enforced without undue embarrassment to the Londens, who were still his clients. Broadman testified that, at the time of assignment, the services he had performed had "used up" all of the $5,000 retainer agreement, and more, and that he was still performing in connection with the Londen Publishing Company bankruptcy. Broadman acknowledged receiving a $10,000 payment from the Londens in May, 1967, which payment had been credited against a total current balance then due him from the Londen interests for services rendered in various matters in excess of $19,000, leaving a post-credit balance due in excess of $9,000.

Shortly after assignment, appellee filed his complaint in the instant case, seeking foreclosure of both mortgages. Appellants, named as defendants, filed an answer asserting their interest in the land and denying appellee's allegation that their interest was subordinate to the lien of appellee's mortgages. Appellee moved for summary judgment on the issue of priority and presented the notes, mortgages, and the abstract of appellants' judgment with dates of recording shown, as well as affidavits of Ira S. Broadman to the effect that the debts secured by the mortgages were past due and owing. We will make subsequent

reference to the affidavits. Appellee placed reliance in the terms of A.R.S. §§ 33–961, subsec. B and 33–964, subsec. A, which together provide that a judgment becomes a lien on the real property of the judgment debtor when an abstract of the judgment is recorded in the county where the property is located, and not before.

Appellants opposed the motion for summary judgment on the ground, *inter alia,* that the $5,000 mortgage was fraudulent and invalid as to them under the provisions of section 4 of the Uniform Fraudulent Conveyance Act, A.R.S. § 44–1004, which reads:

> "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Our act provides that a mortgage is a "conveyance" within the meaning of the quoted statute. A.R.S. § 44–1001. Robert Bernstein, attorney for appellants in the trial court and an affiliate of the law firm named in the abstract of appellants' judgment against the Londens as "Attorneys for Judgment Creditors," filed the following affidavit in opposition to appellee's motion for summary judgment:

> "ROBERT BERNSTEIN, being first duly sworn upon his oath, deposes and says:
>
> "That he makes this Affidavit for and on behalf of the defendants, JOHN J. HAY and GERTRUDE S. HAY, for the purpose of showing that there is a genuine issue of fact, and in opposition to plaintiff's Motion for Summary Judgment.
>
> "Affiant further says that prior to November 2nd and 3rd, 1966, and thereafter, the defendants, JACK W. LONDEN and DORIS LONDEN were insolvent; that their outstanding indebtedness exceeded their assets, and that the defendant, JOHN J. HAY and GERTRUDE S. HAY, his wife, on November 2, 1966

and November 3, 1966, had a judgment rendered in Superior Court, Maricopa County, Arizona, Cause # 178362, in the sum of $50,321.80, unsatisfied.

> "Further Affiant sayeth not."

The trial court rejected appellants' contentions and granted appellee "partial summary judgment." The partial summary judgment provided that appellee's mortgages " * * * constitute a first and valid lien * * *" upon the land in question " * * * superior to any right * * * of the Defendants * * *." Notwithstanding appellants' answer, which generally contested appellee's claim for relief, and the lack of any subsequent qualifying pleading or stipulation, the partial summary judgment also provided that "Evidence shall be taken on a default hearing to determine the exact amount due and owing to Plaintiff herein."

The record shows that such a hearing was held without notice to appellants before a court commissioner on October 24, 1967. The court commissioner entered "JUDGMENT" for appellee on the same day, determining such matters as taxes, costs, and reasonable attorneys' fees. Appellee vigorously contests the rendition of this "default" judgment, citing principles most recently dealt with by our Supreme Court in McClintock v. Serv-Us Bakers, 103 Ariz. 72, 436 P.2d 891 (1968). We will have no occasion to discuss this matter, however, because in our view the trial court erred in summarily adjudicating the priority of the $5,000 mortgage.

Appellants contend that the Bernstein affidavit was sufficient to raise a question of fact as to the Londens' insolvency at the time of the conveyance, and that the question of whether "fair consideration" was given for the mortgage was one to be resolved by a trier of fact after presentation of evidence on the subject.

Appellee attacks the Bernstein affidavit on the ground that it fails to set forth a factual basis for the stated conclusion of insolvency. The condition of being insolvent is defined in the Uniform

Fraudulent Conveyance Act, A.R.S. § 44–1002, and its existence can ultimately be determined only by a fact-and-figure balancing of assets and liabilities. We agree with appellee that the mere statement that one is insolvent is a general conclusion and not in itself admissible in evidence as required by Rule 56(e), as amended, Rules of Civil Procedure. The affidavit does contain, however, the further statements that the Londens' "* * * outstanding indebtedness exceeded their assets * * *," and that appellants "* * * on * * * November 3, 1966, had a judgment * * * in the sum of $50,-321.80, unsatisfied." The absence of a recital that an affidavit is made on the personal knowledge of the affiant is not fatal where its contents show that its material parts are statements of the affiant's personal knowledge. Hoffer v. Wetzel, 95 Ariz. 384, 387–388, 390 P.2d 911, 914 (1964). Important in this connection is the fact that Bernstein was associated with the law firm that represented appellants in the litigation which resulted in their judgment against the Londens.

■ Insolvency is a matter likely to be peculiarly within the knowledge of the judgment debtor, and unknown to the judgment creditor. Considering the nature of the issue, we hold that, at least in the absence of a controverting affidavit, the affidavit of Bernstein is sufficient to raise a factual issue as to the judgment debtor's solvency.

The remaining question is whether appellants were entitled to have presented to a trier of fact the question of whether the mortgage was given "* * * without a fair consideration" under A.R.S. § 44–1004 so as to be vulnerable to attack under A.R.S. § 44–1009.

The parties have ignored, in their briefs in this court, the fact that the term "fair consideration" is the subject of a separate section of the Uniform Fraudulent Conveyance Act as adopted in this jurisdiction. Section 3 of the Act, A.R.S. § 44–1003, styled "Fair consideration," provides in pertinent part as follows:

"Fair consideration is given for property, or obligation:

*　*　*　*　*　*

"2. When such property, or obligation is received *in good faith* to secure a *present advance* or antecedent debt *in amount nor disproportionately small* as compared with the value of the property, or obligation obtained." (Emphasis added.)

The words "present advance" in this section of the Act immediately raise the question of whether an executory promise like the one involved here for the performance of future services can ever constitute "fair consideration." One well-known authority in the field of creditors' rights has taken the position that it cannot. James Angell McLaughlin,[1] writing on "Application of the Uniform Fraudulent Conveyance Act" in 46 Harv.L.Rev. 404 (1933), states at 414 that "An executory promise is not a fair consideration according to the unequivocal language of section 3 * * *." At 447 of the same article, the author labels "clearly erroneous," the holding in Schlecht v. Schlecht, 168 Minn. 168, 209 N.W. 883 (1926), that an enforceable executory promise could constitute fair consideration within the meaning of the section. The author cites approvingly, in note 51, at 414, Hulsether v. Sanders, 54 S.D. 412, 223 N.W. 335 (1929), in which the court held that a promise to pay off an existing mortgage and provide future support for a grantor was not a fair consideration.

Another court construing the Uniform Act has concluded that unless the executory promise is embodied in a negotiable instrument which has been negotiated, it is excluded from the definition of fair consider-

1. James Angell McLaughlin, also known as James Angell MacLachlan, is the author of MacLachlan on Bankruptcy (West Hornbook Series 1956), and coauthor of

· Hanna and MacLachlan Creditors Rights (Foundation Press University Casebook Series, Fifth Edition 1957).

ation set forth in the Act. Angers v. Sabatinelli, 235 Wis. 422, 293 N.W. 173, 179, 128 A.L.R. 1491 (1940), noted 39 Mich. L.Rev. 654 (1941). *See also* Cole v. Loma Plastics, 112 F.Supp. 138, 140 (N.D.Tex. 1953), considering § 67(d) (1), (e) (2) of the Bankruptcy Act, 11 U.S.C.A. § 107, which employs the term "present advance"; and note, "Rights of Creditors in Property Conveyed in Consideration of Future Support," 45 Iowa L.Rev. 546 (1960).

Other cases, however, have accepted the view taken in Schlecht v. Schlecht, *supra,* that an executory promise can be fair consideration. *See* Freitag v. The Strand of Atlantic City, 205 F.2d 778, 784 (3d Cir. 1953); and Hollander v. Gautier, 114 N.J. Eq. 485, 168 A. 860, 861 (1933). 4 Collier on Bankruptcy (14th ed. 1967), speaking of § 67 of the Bankruptcy Act, in § 67.33, at 510–512, would condemn an executory promise "Where the thing promised cannot be beneficial or of avail to the creditors * * *," but sees no reason for the same result where the promise has been partially or totally fulfilled and creditors have been benefited.

The makeweight for us in determining the issue in the present case is the significant number of decisions which have considered and upheld, under varying rationales, conveyances by insolvents to attorneys for their services in pending or certainly impending legal entanglements. *See* Farmers' & Merchants' Nat. Bank v. Mosher, 63 Neb. 130, 88 N.W. 552 (1901), modified on rehearing, 68 Neb. 713, 94 N.W. 1003 (1903), former judgment vacated and decree affirmed, 68 Neb. 724, 100 N.W. 133 (1904); Seals v. Snow, 126 Kan. 246, 267 P. 1105 (1928); Massey-Harris Co. v. Rich, 233 Mo.App. 509, 122 S.W.2d 858 (1938); Zent v. Gilson, 52 Wash. 319, 100 P. 739 (1909); Morrell v. Miller, 28 Or. 354, 43 P. 490 (1896); Adams v. Overboe, 105 Minn. 295, 117 N.W. 496 (1908); Hanneman v. Olson, 209 Iowa 372, 222 N.W. 566 (1928); Thies v. Thies, 111 Neb. 805, 198 N.W. 151 (1924); In re Disbarment of Luce, 83 Cal. 303, 23 P. 350

(1890); Manello v. Bornstine, 44 Wash.2d 769, 270 P.2d 1059, 45 A.L.R.2d 494 (1954); and *see* Annot., 45 A.L.R.2d 500, at 504 et seq.

■ The general rule which has evolved in these and similar cases is that, if the extent of the attorney's employment is "definite," or "fixed," rather than "uncertain," or "indefinite," and is to be commenced and carried out immediately without contingency, a transfer made in good faith securing payment of a reasonable fee is valid, though the debtor be insolvent. *See,* particularly, Massey-Harris Co. v. Rich, *supra,* at 122 S.W.2d 867, and Quinn v. Union Nat. Bank, 32 F.2d 762, at 771 (8th Cir.1929). The latter case was concerned with construction of the words "present consideration" then employed in § 67 of the Bankruptcy Act. The court in *Quinn* invalidated mortgages given by an insolvent on the eve of bankruptcy to attorneys for services to be rendered in "* * * all matters civil and criminal that might arise as to * * *" the insolvent in connection with his widespread and controversial activities in state elective office and private employment. *See* 32 F.2d 771. The court noted that "It could not be determined just what those matters would be." *Id.* Transfers made in connection with similar broad and indefinite undertakings have been held invalid in Shellabarger v. Mottin, 47 Kan. 451, 28 P. 199 (1891), and other cases noted at 45 A.L.R.2d 512–14.

■ Except for the creation of certain presumptions of fraudulent intent, the Uniform Fraudulent Conveyance Act, promulgated in 1917 and enacted in this jurisdiction in 1918, is declaratory of the common law and a restatement of the statute of 13 Elizabeth. Neal v. Clark, 75 Ariz. 91, 94, 251 P.2d 903, 905 (1952). As noted, cases decided prior to the Uniform Act generally sanctioned transfers to attorneys for services in pending cases, at least where, as here, the litigation with respect to which services are sought and the transfer is made is actually pending. Ac-

cordingly, we hold that promise to perform legal services in the future is capable of being "fair consideration" within the meaning of the Act.

But that is not the end of inquiry under § 44–1003. The property conveyed must be " * * * received in good faith * * *" and the consideration flowing to the grantor must not be " * * * disproportionately small * * *." The two concepts of good faith and proportionate consideration are separate but related concepts. Glenn, Fraudulent Conveyances (1st ed. 1931) § 233, at 312. As stated, in § 295 of the same authority, at 396–397, in determining the question of whether property is received in good faith:

> "The question is solely whether the grantee knew, or should have known, that he [the grantor] was not trading normally, but that on the contrary, the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors.
>
> "Such a question, naturally, is one of fact in the sense that no general rule of law can guide us to a decision of the particular case."

■ The requirement of A.R.S. § 44–1003 that transfers be in "good faith" takes on critical significance when an executory promise is the "present advance" for obtaining the debtor's property. If dollar-for-dollar bargaining were all that were required to avoid the act, then contracts to provide future support and maintenance for the life of the transferor would be an attractive and easy way to frustrate this legislation. Accordingly, it is our view that merely because a contract for future legal services is definite enough to constitute a "present advance," and is in exchange for a transfer not disproportionate in value, this does not automatically satisfy the statutory requirement of good faith.

■ Regardless of who has the burden of proof at trial, the party moving for summary judgment has the initial burden of showing that there is no issue as to any material fact and that he is entitled to judgment as a matter of law. Elerick v. Rocklin, 102 Ariz. 78, 81, 425 P.2d 103, 106 (1967). Plaintiff here has never met this initial burden. There is no showing in this record of sufficient definiteness of this contract for legal services so as to qualify it as a "present advance," nor is there any showing of good faith or fair consideration.

Broadman's deposition indicates that the $5,000 mortgage was given to secure payment for services to be rendered by him in a newly filed bankruptcy, or in a "bunch of litigation" involving the Londen Publishing Company. There is no showing in affidavit or deposition as to the nature and extent of the services contemplated at the time of the transfer, or that the services actually performed were performed pursuant to the original agreement. Accordingly, we see no way in which the trial court could have found as a matter of law that this was a "present advance."

As for the matter of good faith, affidavits and deposition do not indicate that this retainer contract was a normal one in the light of the circumstances, and that it was not made for the predominant purpose of transferring assets to avoid creditors.

Likewise, there is nothing in the record which removes the issue of proportionate consideration from the area of disputed fact. The question of proportionate consideration must always be determined " * * * upon the facts and circumstances of each particular case." Neal v. Clark, supra, 75 Ariz. at 94–95, 251 P.2d at 906. While ledger sheets showing the running account for services rendered in behalf of the Londen interests were attached to one of Broadman's affidavits, they do not purport to segregate services rendered in connection with the Londen Publishing Company bankruptcy from services rendered in the various other proceedings which were referred to in the deposition. The amount of time actually spent by Broadman on these matters is not shown nor is the hourly rate charged against the retainer established. There is not even a statement to

the effect that the charges made were reasonable.

On motion for summary judgment, all reasonable doubts are to be resolved in favor of trial on the merits, Peterson v. Valley National Bank of Phoenix, 90 Ariz. 361, 368 P.2d 317 (1962), and this is particularly so when the subjective state of mind of a party is involved. Gaethje v. Gaethje, 7 Ariz.App. 544, 550, 441 P.2d 579, 585 (1968). Accordingly, this cause must be reversed and remanded for further proceedings not inconsistent herewith.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).