THE WINFIELD NATIONAL BANK v. PETER C. CROCO.

1. DEBTOR—*Preference of Creditors.* A debtor in failing circumstances may prefer one creditor to another, although that creditor may be his wife, and he may in good faith transfer his property at a fair price to her in payment of her *bona fide* claim.

2. FRAUDULENT CONVEYANCE —*Attachment.* A conveyance of land by an insolvent debtor to his attorney, to pay for services to be rendered for him and for other persons with whom he has business relations, for two years in the future, and with the provision that any fees allowed to the attorney by the courts in such further litigation should be returned to the debtor, constitutes a fraud against existing creditors, and furnishes grounds for the issuance of an attachment.

*Error from Cowley District Court.*

THE facts appear in the opinion. The plaintiff *Bank* brings to this court for reversal two orders dissolving certain attach-

ments, made by the district judge at chambers, on March 2, 1889.

*Sam'l D. Pryor,* for plaintiff in error.

*McDermott & Johnson* and *S. E. Fink,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Two actions were brought in the district court of Cowley county by the Winfield National Bank against Peter C. Croco. The first was brought upon a promissory note for $5,405, which was not then due; and the second was upon promissory notes which were past due, amounting to $3,731.91. Orders of attachment were obtained by the bank, upon the grounds that the defendant was about to convert a part of his property into money for the purpose of placing it beyond the reach of his creditors, and had assigned and disposed of his property, or a part thereof, with the fraudulent intent to hinder, delay and defraud his creditors. Afterward, the defendant moved to discharge the order of attachment in each case, for the reason that the grounds alleged in the affidavit made to obtain the attachment were untrue. The motions were heard together and upon the same evidence, before the judge at chambers, and the attachments were discharged. Without waiting for the final disposition of the cases, the plaintiff comes here asking a review and reversal of the orders discharging the attachments.

The question tried by the judge at chambers was the good faith and honesty of certain transfers of property made by Peter C. Croco about February 1, 1889, and while he was in a failing condition. In the early part of 1889 defendant became financially embarrassed, and transferred land and other property to his wife, of the estimated value of $6,100. He conveyed property to S. E. Fink, his attorney, worth about $500, and soon afterward made an assignment of the remainder of his property for the benefit of all his creditors. In 1881 his wife obtained from her father, in Ohio, $2,000 in

cash, and $2,000 in promissory notes, which were subsequently collected, and the testimony is that she loaned this money to her husband at the interest rate of 10 per cent. per annum. Later on, and some time about April, 1888, she received the additional sum of $500 from her father, which was also loaned to her husband on the same terms. At the time of the transfer his indebtedness to her amounted to more than $7,000, and the testimony offered by defendant in error shows that the property transferred to his wife in payment of this indebtedness was worth less than $7,000. She, however, accepted the property as full payment, and is claiming no interest in the estate conveyed by the general assignment. Upon testimony somewhat conflicting, it has been found that the transfer was made in good faith, to pay a *bona fide* debt, and hence, as to this transfer, there is little left for us to determine. A reading of the evidence satisfies us that it was amply sufficient to sustain the finding of the judge. No good purpose would be served by reciting or analyzing it. It is enough to say that the defendant showed quite clearly the receipt of the money by Mrs. Croco from her father, the loaning of the same to the defendant, and his promise to repay the amount and a stipulated rate of interest; and that all this was done while he was in a sound financial condition. It is true that the transfer was made to her while he was insolvent, and that he had consulted an attorney to ascertain whether he could prefer his wife to other creditors; and further, that he was contemplating a general assignment when the transfer was made to his wife. But these things do not affect the validity of a transfer made in good faith to pay a *bona fide* debt. It is well settled that a debtor in failing circumstances may prefer one creditor to another,

1. Debtor—preference of creditors. although that creditor should be his wife, and he may in good faith transfer his property at a fair price to her in payment of her *bona fide* claim. (*Monroe v. May*, 9 Kas. 473; *Tootle v. Coldwell*, 30 id. 125; *Bailey v. Kas. Mfg. Co.*, 32 id. 73; *Kennedy v. Powell*, 34 id. 22; *Chapman v. Summerfield*, 36 id. 610; *DeFord v. Nye*, 40 id. 665.)

A decision upholding the validity of the transfer to the wife, however, does not settle that there were no grounds for the issuance of the attachment, nor that the conveyance of property to Croco's attorney is valid. About the time that the transfer was made to his wife, and just before the general assignment, he conveyed about 165 acres of unimproved land, worth about $500, to S. E. Fink, his attorney, not for services that had been rendered, but largely for services to be rendered in the future. It was made, not only for services in behalf of Croco himself, but also for services to Croco's wife, his father, his mother, as well as for the administrator of the estate of a deceased brother. The conveyance was made in pursuance of a written contract entered into on the same day, which is as follows:

"Contract between P. C. Croco and Rachel A. Croco, his wife, John Croco and Barbara Croco, his wife, and P. C. Croco as administrator of the estate of Melancthon Croco, deceased, and S. E. Fink.

"It is this day agreed by and between the parties hereto, that the said S. E. Fink shall transact all legal business for all the parties named, for the period of two years from and after the 31st day of January, 1889, that may be done in any of the courts of Cowley county, Kansas; and in the event of suits begun within the two years and not ended, that the said Fink shall continue to transact the necessary business pertaining thereto until all business for said estate by way of settlement until the estate is finally settled; and all allowances made as counsel fees are to be transferred to said administrator and to become his property.

"For and in consideration for such services rendered and to be rendered under this contract, P. C. Croco and wife agree to pay the same, and the said Fink agrees to accept as pay the following-described piece of real estate: Being lots 2 and 3, and southeast quarter of northwest quarter, and west five acres of south half of northeast quarter, and northeast quarter of southwest quarter, section 18, township 34, range 7 east of 6th principal meridian, containing 156½ acres more or less— all in the county of Cowley and state of Kansas; that the said lands so deeded by these parties is because of all the anticipated legal aid needed by the said John Croco and wife, that arises and probably will arise out of the complications growing out

of his indorsing and security given to the said Peter C. Croco by going upon his paper.

"It is further understood and agreed, that should there be any expenses attending the transaction of the business for the parties hereto, the same shall be paid by the party employing, and not the employed.

"In witness whereof, we hereunto set our hands, the day herein written.         S. E. FINK.
PETER C. CROCO.
RACHEL A. CROCO.
JOHN CROCO.
BARBARA CROCO.
PETER C. CROCO, *Administrator.*"

While Croco could have paid his attorney with money or land for any preëxisting *bona fide* indebtedness, he cannot, while in an insolvent condition, take any portion of the property which fairly belongs to his creditors to pay the debts or obligations of other people. By this contract he undertook to pay the expenses, not only of his own litigation for the period of two years in advance, but for all legal business that might be transacted for Rachel A. Croco, John Croco, Barbara Croco, and the administrator of the estate of Melancthon Croco, in any of the courts of Cowley county. The agreement also contemplated that the attorney should obtain allowances as counsel fees from the probate court in the settlement of the estate of the deceased brother, and that these allowances were to be paid over to Peter C. Croco, and to become his property. Whatever may have been the intention of Croco, this agreement and the carrying out of the same amounted to a withdrawal of that which justly belonged to his *bona fide* creditors, and operated to delay and defraud his creditors in the collection of their debts. While in an insolvent condition he created a new debt for something to be obtained two years in the future, and tried to pay it with property which should have been devoted to the payment of debts then existing. He goes further, and tries to provide and pay legal counsel for his relatives an equal length of time in the future, when his entire estate was insufficient to meet his own existing obli-

2. Fraudulent conveyance—attachment.

gations. The validity of the transfer to Fink, therefore, cannot be sustained, and the making of the same furnished grounds for the issuance of an attachment. While the property conveyed to the wife could not be taken on the attachment issued, the land attempted to be transferred to Fink was subject to a levy, and there may have been other property that might properly have been seized under the order that was discharged. While the judge was warranted in discharging ånd releasing some of the property which had been seized, his finding that the attachment should not have issued, and the absolute discharge of the attachment that was issued, was error, for which there must be a reversal of the order made by the judge at chambers in each of the cases. That will be our judgment.

All the Justices concurring.

*Per Curiam:* The case of J. C. FULLER v. P. C. CROCO is a proceeding brought to reverse an order discharging an attachment. The grounds for attachment, the evidence submitted on the motion to discharge the same, and the questions raised for determination, are substantially the same as in *National Bank v. Peter C. Croco*, just decided, and on the authority of that case the order of the district judge discharging the attachment must be reversed.