J. L. SHELLABARGER *et al.* v. F. J. MOTTIN *et al.*

FRAUDULENT CONVEYANCE — *Attachment* — *Sufficient Grounds.* Where an insolvent debtor, being pressed by his creditors, executes a chattel mortgage upon his personal property to pay or secure for his attorney $500, most of which is in consideration of future legal services, such mortgage is an unlawful withdrawal of that which justly belongs to the *bona fide* creditors of the insolvent debtor, and operates to delay and defraud his creditors in the collection of their debts. The execution and delivery of such a mortgage furnish sufficient ground for the issuance of an attachment against him.

### *Error from Cloud District Court.*

ATTACHMENT suits against *Mottin* and another, by the following plaintiffs, to wit: *J. L. Shellabarger, et al.*, Wm. Broadhead *et al.*, Tootle, Hosea & Co., (two cases,) J. H. Lee & Co., Wm. E. Schmertz & Co., and Phelps, Dodge & Palmer Company. At the April term, 1889, all the attachments were dismissed on defendants' motion, and plaintiffs in each case come to this court. The facts are stated in the opinion.

*Jetmore & Jetmore,* for plaintiffs in error.

*Theodore Laing,* for defendants in error. .

The opinion of the court was delivered by

HORTON, C. J.: From December 8, 1887, to March 23, 1889, F. J. Mottin and Ferd. Mottin, partners as Mottin Bros., were engaged in the general merchandise business at Clyde, in Cloud county, in this state. At the time of commencing business the Mottin Bros. were worth from $15,000 to $21,000. About midnight of Friday, March 22, 1889, being insolvent, they made a general assignment to C. W. Van DeMark. The assignment was dated March 23, 1889. It included their stock of goods, etc., furniture, fixtures, real estate and equities of both partners, not exempt by law. The sworn schedule of liabilities showed a firm or partnership indebtedness of $12,524.94. At the time, F. J. Mottin had

debts secured by mortgages upon his individual estate of $6,884. · On March 21, 1889, they executed to the Van De Mark Bros. a chattel mortgage of $584.70 upon their stock of goods. On March 22, 1889, they also gave another chattel mortgage for $500 to the Van DeMark Bros. covering their entire stock. This was given to secure a note for attorney fees. On April 8 and 9, 1889, various creditors of the Mottin Bros. commenced actions against them for large sums of money alleged to be due, and attachments were also issued in all of these actions against the property of the defendants. Their stock, furniture, fixtures, etc., were attached, and appraised at $9,991.51. All of the foregoing cases involve the same questions, and therefore are considered together.

The affidavits for attachments alleged, among other things, that —

"Said defendants, F. J. Mottin and Ferd. Mottin, partners as Mottin Bros., were about to assign, remove and dispose of their property, or a part thereof, with the intent to defraud, hinder and delay their creditors, and had assigned, removed and disposed of their property, or a part thereof, with the intent to defraud, hinder and delay their creditors, and fraudulently contracted the debt and incurred the liability and obligation for which the actions were brought."

The Mottin Bros. filed their motion to vacate and dismiss the attachment proceedings, principally for the reason that the grounds for the attachments alleged in the affidavits were not true. The motion to vacate and dismiss the attachment proceedings was heard at the April term of the court for 1889, and, after hearing the evidence and arguments in the cases, the motion was sustained, and all of the attachments were vacated and dismissed. The plaintiffs below excepted, and complain of the rulings of the court below.

Various errors are alleged, but we need refer to one only. The chattel mortgage dated March 22, 1889, for $500, was not executed until the Mottin Bros. had determined to make an assignment of their property, and was executed at about the same time. The Van DeMark Bros. agreed to secure

Theodore Laing, as the attorney for the Mottin Bros., and they agreed to become responsible to him for his advice, services, etc., as the attorney for them. Ferd. Mottin stated, among other things, as follows:

"That. Laing was employed by the Van DeMark Bros. as attorney for him and his brother; that he thought he would need legal advice before he got through the assignment."

C. W. Van DeMark testified as follows:

"Ques. For what was the note and mortgage of $500 given by Mottin Bros. to Van DeMark Bros.? Ans. Well, I can explain the whole thing. I don't like to answer in any other way.

"Q. Go on. A. Mottin Bros. came to me and spoke about their difficulties — bills coming due and trade being slack; and they didn't see how they were going to meet their bills; didn't see what they were going to do, and thought they would probably have trouble with some of their creditors when their bills came due; and was consulting me frequently about it. I told them that I didn't feel competent to give them advice about it; that they had better see some attorney that could advise them . better than I could in the matter, and they said they wasn't acquainted with any, and I mentioned the names of several parties in Concordia, attorneys, and I mentioned Mr. Laing's name, and they wanted I should go and see Mr. Laing for them and employ him as counsel in these matters, or in any other matters that might come up. I went to Concordia and saw Mr. Laing and told him what they wanted, and told him about their condition so far as I knew that they were in; that they hadn't got any money at that time. Mr. Laing told me that if Van DeMark Bros. would guarantee the fee it would be all right; told me how much he would want as their attorney in any matters that might come up in relation to their business.

"Q. What sum did he name? A. $500. I then went back and told Mr. Mottin what Mr. Laing had said, and that I would guarantee this providing that they would give Van DeMark Bros. a mortgage for security, but that we wouldn't guarantee it without some security, and the note and mortgage were given for that purpose.

"Q. Did you notify Mr. Laing of the result and let him know that he was employed under those circumstances? A. I did."

Theodore Laing testified that "the fee was taken in full payment of all their services to Mottin Bros. in all of the business they had, and anything that might come up in which they were affected." It therefore clearly appears from the evidence that the mortgage of $500 which was given for attorney's fee was partly for future services; that is, the mortgage was for services part of which, and most of which, according to the evidence, were to be rendered in the future. Therefore, while the Mottin Bros. were in an insolvent condition, they created, or attempted to create, a new debt for something to be performed in the future, and tried to pay it with property which should have been devoted to the payment of their debts then existing. This mortgage therefore cannot be sustained, and the making of this mortgage furnished ground

*Fraudulent conveyence— attachment— sufficient grounds.* for the issuance of the attachments. It would be a fraud upon creditors to permit an insolvent debtor to place his property beyond their reach by transferring or conveying it to an attorney, or to some one for the benefit of the attorney, for future legal services, to be rendered in whatever litigation the debtor might thereafter be engaged. (*National Bank v. Croco,* 46 Kas. 629; *Crain v. Gould,* 46 Ill. 294; *Hill v. Agnew,* 12 Fed. Rep. 230; *Nichols v. McEwen,* 17 N. Y. 22.) The mortgagors and the mortgagees were fully acquainted with the purpose of the mortgage, and were involved, as well as the attorney, in the scheme to contract for future legal services and to transfer sufficient property from the Mottin Bros., just about the time of the making of the assignment, to pay for such future services. There were no innocent parties in this transaction. The assignee, C. W. Van DeMark, did not join in the motion to vacate the attachments, or ask for the discharge of the stock, etc., from the attachments; therefore, all that is before us for decision is the error of the court in vacating the attachments against the Mottin Bros. The orders vacating and setting aside the attachments in all of the above cases will be reversed, and the cases will be remanded, with direction to the district

court to reinstate the cases and to overrule the several motions
to vacate and dismiss.

All the Justices concurring.