Marshall v. Van De Mark.

EDWARD MARSHALL *et al.* v. C. W. VAN DE MARK.
No. 8857.

1. ASSIGNMENT— *entire estate conveyed, not invalidated by synchronous void mortgages; nor by untenable claim of exemption.* Where an assignment is made for the benefit of creditors, which by its terms conveys all of the property of the assignors in trust for the benefit of all their creditors equally, and the bulk of the assigned property is delivered to the assignee, the assignment will not be rendered void by the execution of void chattel mortgages for small amounts at substantially the same time; nor by the assignors making an invalid claim to a small part of their estate as exempt, where it appears that the whole estate can be applied for the benefit of all the creditors substantially as the law provides.

2. ———— *policy of our law to uphold and protect estate against attempted frauds.* It is the policy of the law in this State to uphold assignments made by insolvent debtors for the benefit of their creditors, and to strip the assigned estate of all attempted fraudulent claims or incumbrances, and apply the whole property to the payment of the debts of the assignor *pro rata.*

*Error from Cloud District Court.*
*Hon. F. W. Sturges, Judge.*

AFFIRMED.                    OPINION FILED OCTOBER 10, 1896.

THIS action was brought by C. W. Van De Mark against Edward Marshall, Sheriff of Cloud County, and others to recover the value of a stock of merchandise, claimed by the plaintiff as assignee of Mottin

Brothers, which had been taken from the plaintiff's possession by the Sheriff under divers writs of attachment issued against Mottin Brothers. A jury was waived, and the Court made special findings of fact and conclusions of law, some of which were in answer to special questions submitted by counsel for the defendant. The method pursued occasions much needless repetition and verbiage. The firm of Mottin Brothers consisted of F. J. and Ferd. Mottin. They were retail merchants at Clyde. In March, 1889, their stock of goods and fixtures inventoried about $12,500, and they owed debts amounting to about that sum. F. J. Mottin also owned certain lands covered by mortgages which had been given to Van De Mark Brothers and by them transferred with a guaranty of payment. On March 21, the plaintiff, who was a member of the firm of Van De Mark Brothers, demanded payment of certain interest coupons secured by these mortgages, and a commission note, amounting in all to $584. Being unable to pay this sum, the Mottin Brothers executed a mortgage on their stock and fixtures to Van De Mark Brothers to secure the payment of it.

At the time they executed this mortgage, the Mottins were apprehensive that all their creditors might insist on immediate payment or security; and, not being able to pay or secure all in full, were desirous to pay or secure each in proportion to his claim, and so at the time informed said Van De Mark, and requested him to advise and assist them in so doing. Van De Mark, though an attorney at law and previously in practice, was not at that time in active practice, and so informed the Mottins, and advised them to employ an attorney in active practice and recommended Mr. Laing. The Mottins, not being per-

sonally acquainted with attorneys other than Van De Mark, authorized him to employ Mr. Laing for them. Thereupon Van De Mark saw Laing and made known to him the condition of the Mottins and their desire to employ him as their attorney; and after learning the terms on which he would accept such employment, and communicating the same to the Mottins, Laing was employed for a stipulated fee of $500, for which Van De Mark Brothers became liable to Laing; and Mottin Brothers, on the 22d of March, in the forenoon, executed and delivered to Van De Mark Brothers a chattel mortgage for $500 on their stock and fixtures to secure them against loss by reason of their liability to Laing. After consultation with Laing, and in pursuance of his advice, Mottin Brothers executed a deed of assignment to the plaintiff of their property, real and personal, not exempt from execution, and all real estate owned by either of said parties, in trust, for the benefit of all their creditors, to be sold and disposed of as provided by law. The deed of assignment was prepared by Mr. Laing at his office in Concordia on the afternoon of March 22, and was executed about midnight that night, and delivered to Van De Mark, who recorded it the next morning between 8 and 9 o'clock. The chattel mortgages before mentioned were filed with the Register of Deeds about 6 o'clock on the afternoon of the 22d. Van De Mark took possession of the goods on the 23d, as such assignee as well as mortgagee by virtue of said chattel mortgages, and so held them until they were taken from him by the defendant as Sheriff. On the same day Ferd. Mottin moved into the Lusadder house in Clyde, which had been traded for by F. J. Mottin in exchange for one of his farms, and which was encumbered to about its

value, though at that time believed to be worth about
$1,000 in excess of the mortgage.　He claimed it as a
homestead.　On the same day F. J. Mottin moved
out of the Lusadder house with his family to a 240-
acre farm covered by a $2,000 mortgage, and believed
to be worth $3,500, intending to hold 160 acres of it
as a homestead.　The farm was afterward sold under
foreclosure of the mortgage, and failed to bring enough
to pay the debt.　There was also a delivery team
worth about $100, which F. J. Mottin claimed as ex-
empt.　After the deed of assignment was recorded,
C. W. Van De Mark was duly chosen permanent as-
signee by the creditors, gave bond, took the requisite
oath, and filed an inventory of the property, which
was appraised at $12,000.　The stock of goods and the
fixtures were taken from the plaintiff by the Sheriff
under divers writs of attachment, and afterward sold
by him for the sum of $6,025.　The Court found the
property at the time it was taken to have been reason-
ably worth $6,500.　Claims amounting to $5,291.50
were duly proved against the estate by parties other
than the attaching creditors.　Conclusions of law were
stated at some length, on which a judgment was ren-
dered in favor of the plaintiff for the value of the goods
and interest.　The defendants bring the case here for
review.

Pulsifer & Alexander, for plaintiffs in error.

Theodore Laing, for defendant in error.

ALLEN, J.　It is strenuously insisted for the plain-
tiffs in error that the two chattel mortgages executed
by Mottin Brothers to Van De Mark Brothers were
fraudulent; that there was also a fraudulent reten-
tion of property under claims of exemption from

execution; and that these are sufficient to poison, contaminate and render void the whole assignment. In the suits in which the attachments were issued under which the Sheriff seized the goods, a motion was made to discharge the attachments on the ground that the charge made in the affidavit for attachment of a fraudulent disposition of their property by Mottin Brothers was not true.    The main ground relied on to sustain the attachments in that case was the $500 mortgage to secure Van De Mark Brothers for their liability for the $500 attorney's fee to Mr. Laing. As this fee was mainly for services not then rendered, this Court held in the case of *Shellabarger v. Mottin*, 47 Kan. 451, that the mortgage was an unlawful withdrawal of that which justly belonged to the *bona fide* creditors of the debtor, and operated to delay and defraud them; and that it was sufficient proof of fraud to sustain the attachments.    It is now insisted that

1. Assignment not invalidated by synchronous void mortgages.

this mortgage was executed at substantially the same time as the deed of assignment; that the two were really parts of the same transaction, and that the fraud in the chattel mortgage also attaches to the deed of assignment and renders it void.    Many authorities are cited to the effect that attempted preferences by chattel mortgages executed at the same time, or the retention of a part of the estate of the assignor for his own benefit, operate to defeat the assignment and render it void as to creditors.    The authorities cited strongly support this position in jurisdictions where the assignee is regarded as the personal representative of the assignor and is denied the right to assert any claims to the assigned property which he, himself, would be estopped from asserting; but this Court has taken a different view of our statute governing as-

signments for the benefit of creditors, since the passage of the act of 1876 providing for the election of an assignee by the creditors. Even if we construe the findings of fact as counsel for plaintiffs in error ask us, and hold that the mortgages and the deed of assignment constitute but one transaction, it is settled by prior decisions that, though the mortgages are void as attempted preferences, the deed of assignment is valid and conveys the whole property in trust for all the creditors equally. *Watkins National Bank v. Sands*, 47 Kan. 591; *Brigham v. Jones*, 48 id. 162. In *Chapin v. Jenkins*, 50 Kan. 385, it was held that, "where an assignment is made by such mortgagor, the assignee is the representative of all the creditors, and for their benefit may contest the validity of such a mortgage in an action brought thereon by the mortgagee to recover the possession of the mortgaged property." The same doctrine is reiterated in the cases of *Jones v. Kellogg*, 51 Kan. 263; *Walton v. Eby*, 53 id. 257, and *Goodman v. Kendall*, 56 id. 439. Does the fact that in this case the $500 mortgage was void, not merely as an attempted preference, but as an attempt to pay for services, not yet rendered, out of the assigned estate to all of which existing creditors were justly entitled, present a case differing in principle from those cited? It may be said that this was an attempt by the assignors to secure a benefit to themselves out of the assigned estate; but the deed of assignment is general in its terms and sufficient to convey the entire estate to the assignee. The mortgage is void. Being void, it is inoperative; and we must hold that it does not affect the validity of the deed of assignment. The circumstance that these chattel mortgages were given to the firm of Van De Mark Brothers, of which the assignee was a

member, is commented on as showing a participation by the assignee in an attempted fraud by the assignor. Doubtless a case might be presented of a collusive attempt by the parties to the deed of assignment to actually withdraw the assigned estate from the reach of the process of the court, and deprive the creditors of the benefit of it, which would warrant the court in holding the whole transaction void. But in this case there is nothing showing removal or concealment of any property by the parties to the assignment; and the attempted payment of attorney's fees out of the assigned estate for services thereafter to be performed, though fraudulent in law as to creditors, does not impress us as such a fraud as ought to be held to vitiate the assignment. The substance of the whole transaction is that the deed of assignment passed the whole of the assignor's estate to Van De Mark, as a temporary trustee, for the benefit of all the creditors of Mottin Brothers. The creditors themselves thereafter, under the statute, chose whom they pleased to act as permanent assignee. In this case they chose the same person that was named in the deed of assignment. The title of the assignee to the property is only that of a trustee. It is the creditors who are

2. Policy of law to uphold assignments and protect against frauds.

the real parties beneficially interested in the assignment. Unless it is apparent that they are to be defrauded the assignment should be upheld. The policy of our law is to discourage attacks on assignments made for the benefit of creditors which fairly transfer all the assignor's property to be disposed of in the manner the statute points out. Even if the creditors make a mistake in the selection of an assignee, or if the assignee prove unfaithful, the beneficiaries of the estate are not without remedy. Where good cause is shown

the Court may remove the assignee from his trust and appoint another in his stead. *Caldwell v. Matthewson*, ante, p. 258. In jurisdictions where the assignee is not permitted to allege the fraud of his assignor for the purpose of recovering property fraudulently conveyed or otherwise disposed of by the assignor, the necessity for holding an assignment tainted with fraud void in order to protect the rights of creditors, is apparent; but where the assignee, as in this State, is permitted to recover all property fraudulently transferred, and to defend against fraudulent mortgages, the necessity ceases, and with it the rule of law based upon it.

The claims made by the assignors to certain property as exempt clearly cannot affect the validity of the assignment. Nor does the failure of the assignee to recover property retained by the assignors, the title to which actually passed by the deed of assignment, alter the case in any degree. The creditors have ample remedy for any neglect on his part.

The rulings on the introduction of testimony complained of are quite unimportant, and do not furnish ground for a reversal.

The judgment is affirmed.

All the Justices concurring.