THE MASSEY-HARRIS COMPANY, APPELLANT, v. E. L. RICH, OLIVER FARM EQUIPMENT SALES COMPANY, GARNISHEE, H. D. ARMSTRONG, INTERVENOR, RESPONDENTS.—122 S. W. (2d) 858.

Kansas City Court of Appeals. December 5, 1938.

*Samuel Feller* for appellant.

*William S. Gabriel* and *Russell W. Gabriel* for respondents.

SHAIN, P. J.—In this action, filed April 12, 1932, and trial and judgment on April 22, 1936, we are called upon to review proceedings had in the Circuit Court of Jackson County, Missouri, wherein the Massey-Harris Company sued E. L. Rich on a judgment obtained by it against Rich, in Scott County, Kansas. In this action the Oliver Farm Equipment Sales Company was garnisheed, and R. D. Armstrong, an attorney-at-law, is intervenor.

To the end of an intelligent understanding of the questions before

us for review, we set forth in chronological order the facts and circumstances out of which the issues involved grew:

It appears that prior to September, 1930, the Oliver Farm Sales Equipment Company had filed suit against E. L. Rich in the District Court of Scott County, Kansas, and in September, 1930, obtained judgment against said Rich in the sum of $810.25:

It appears that said Rich, at the commencement of said suit, employed R. D. Armstrong for the terms that said litigation should last, and that said contract of employment was for reasonable compensation for services and expenditures on the part of Armstrong;

It appears further that at the request of said Rich, Armstrong employed Fred J. Evans to assist in the litigation;

An appeal was taken from the judgment aforesaid and Rich gave a bond to stay execution and thereafter and on September 8, 1930, the Oliver Farm Equipment Company, plaintiff in said cause, gave a restitution bond under the provisions of the law of Kansas, and amount of judgment was paid into said company's hands;

In November, 1931, the Supreme Court of Kansas reversed and remanded cause for trial;

It appears that prior to September, 1931, the Massey-Harris Company, plaintiff herein, had brought suit against E. L. Rich and in September, 1931, had judgment in the District Court of Scott County, Kansas, against said Rich, in the sum of $1632.33;

It is upon this judgment that this suit was brought on April 12, 1932;

On September 22, 1932, a writ of attachment, issued out of the Circuit Court of Jackson County, Missouri, in the aforesaid suit, was placed in the hands of the Sheriff of Jackson County, Missouri, and the Oliver Farm Equipment Company was summoned as garnishee, same made returnable to November term, 1932, of said circuit court;

It is shown that at said November term of said court the Massey-Harris Company, plaintiff herein, filed interrogatories;

Thereafter the record as to the aforesaid suit and garnishment is silent until August 7, 1935.

As to the suit of the Oliver Farm Equipment Company against Rich, it is shown that same was thereafter tried in aforesaid court in Kansas, resulting in a hung jury. It is shown that another trial was had resulting in a verdict for Rich. It is shown that an appeal thereafter was taken by the Oliver Farm Equipment Company, and thereafter judgment in favor of Rich was affirmed by the Supreme Court of Kansas. It appears in evidence that the termination of the Oliver Farm Equipment Company case was in the spring of 1935.

It appears that during the progress of the trial in the Oliver Farm Equipment Company case Mr. Rich made an assignment of $810.25,

in the hands of Oliver Farm Equipment Company as aforesaid, to Mr. Armstrong.

As much of the controversy herein revolves around the aforesaid assignment, we set forth the same in full as follows:

"Whereas, on the 13th day of September, 1930, the defendant, above named, caused to be paid to the clerk of said court, the sum of $810.28, in compliance with the order of the court herein, the same being the full amount of the judgment, interest and cost of the plaintiff in said action on that date, and on the same day the plaintiff made and filed in said action its bond by the terms of which plaintiff undertook and agreed to repay said amount to the clerk of said court in the event said judgment should be reversed, vacated or set aside, and thereafter the Supreme Court of the State of Kansas reversed and vacated said judgment and by reason thereof said sum is now owing and due to the defendant, E. L. Rich.

"Now therefore, in consideration of the sum of $1.00 and other valuable considerations to me in hand paid, receipt of which is hereby acknowledged, I, E. L. Rich, do hereby sell, assign, transfer, set over and convey to R. D. Armstrong of Scott City, Kansas, the aforesaid sum of $810.28 and all of my right, title, and interest therein and thereto and direct that said sum be paid to the said R. D. Armstrong or his assigns.

"Dated February 3, 1932.

"E. L. Rich."

As showing the consideration claimed for said assignment, we set forth in full the letter from Armstrong to Rich, under date of February 1, 1932, as follows:

"February 1, 1932.

" Mr. E. L. Rich,
"1461 Joliet,
"Aurora, Colorado.
"Dear Mr. Rich:

"I fully appreciate your financial difficulties but I feel since the Oliver Farm Equipment case was reversed by the Supreme Court that it is now possible for you to make an adjustment of your affairs with me, therefore, I have concluded to submit this proposition to you.

"You assign to me your rights to the item of $810.28 which we paid into court on September 13, 1930, which sum the Oliver people will be required to repay if we should eventually win the lawsuit and I will surrender to you your note for $400.00 given to me September 4, 1930, and release the mortgage to secure it and will pay the expenses and attorneys fees in this litigation.

"I am confident that we will recover this money, but if we should fail, I would be loser, the amount of your indebtedness to me, Mr. Evans' attorney fee and the expenses of the litigation besides my

work. Therefore, I feel that the proposition is very fair on my part.

"I would expect you to attend the trial of the case here at Scott City at your own expense whenever you receive instructions from me to do so.

"If you wish to accept this proposition, you will please execute the assignment which I am enclosing herewith, have your signature properly witnessed and return to me promptly so that I may file it in the District Court.

"Yours respectfully,

"RDA/S."

It is shown that on August 7, 1935, the Oliver Sales Company, garnishee herein, filed what is termed "Supplemental Answer To Garnishee." This answer has 'the language, "that as disclosed in its original answer." However, no such original answer is shown of record. In this answer there is a paragraph as follows:

"That prior to the filing of this attachment suit by plaintiff and the issuance and service of the writ of garnishment herein, and under date of February 3, 1932, the defendant Rich assigned in writing to one R. D. Armstrong the aforesaid sum of $810.28 with all of his rights therein and thereto, which assignment was filed in the office of the Clerk of the District Court of Scott County, Kansas, under date of February 5, 1932, and thereafter the then contingent liability of garnishee after the aforesaid restitution bond was due to the said R. D. Armstrong and not to defendant Rich and no funds or property of the defendant were reached in the hands of this garnishee in this attachment action."

Some nine months after the above answer, the plaintiff herein filed a denial of garnishee's aforesaid answer. Germaine to the issues herein, the aforesaid denial contains the following language:

"The plaintiff denies that the defendant Rich at any time prior to the service of the notice of garnishment herein assigned said restitution bond to R. D. Armstrong or to anyone else. Plaintiff in this connection alleges that if the defendant Rich on February 5, 1932, or any other time attempted to or did assign or transfer said restitution bond to said R. D. Armstrong, that the same was done when said defendant was insolvent and was done collusively with said Armstrong for the purpose of hindering, defrauding or delaying the creditors of said defendant in the collection of their debts against him and particularly this plaintiff who at that time had a judgment against said defendant, being the same judgment on which this suit is brought. That said assignment and conveyance, if made, was made without a valid consideration and was fraudulent and void and said Armstrong knew at the time that such assignment, if any was made, that the same was made by defendant with the intent of hindering, delaying or defrauding plaintiff in the collection of its said judgment against defendant."

It appears that R. L. Rich, defendant herein, filed answer to plaintiff's petition herein, but, insofar as the controversy is concerned, seems to have stepped out of the picture.

It appears that R. D. Armstrong filed an interplea, setting forth his claim to the funds in the hands of the garnishee, and bases his claim on the aforesaid assignment. To said interplea, plaintiff files answer by way of general denial and in further answer, the following appears:

"For further answer this plaintiff alleges that if there was any assignment to said R. D. Armstrong of the bond executed by the garnishee, as alleged in said interplea, that such assignment was made under and in pursuance of a conspiracy and confederation entered into by and between the defendant, E. L. Rich, and said R. D. Armstrong for the purpose of hindering, delaying and defrauding the creditors of the said defendant Rich, and especially this plaintiff, . . ."

We have set forth above such showings of record as we conclude are germaine to questions before us for review under assignments of error.

There was a trial had before a jury. At the close of the evidence, plaintiff and interpleader asked for and were refused demurrers. Thereafter the court gave instructions on behalf of plaintiff and interpleader, and the jury found issues in favor of plaintiff. The verdict being as follows:

"We the jury find the issues for the plaintiff, the Massey-Harris Company, and against the intervenor, Armstrong, and that the plaintiff is entitled to the money in the hands of the garnishee.

"(Signed) F. E. Spaulding,
"Foreman."

Interpleader filed motions for new trial and in arrest, and the same were sustained. The trial court, in passing upon motions and in granting new trial, assigned reasons.

The judgments of the court and exceptions are of record as follows:

"And afterwards, and on the 30th day of June, 1936, the same being the 43rd day of the regular May Term, 1936, of said court, the said intervenor's motion for a new trial was taken up and submitted to the court, and having been by the court seen and heard, and duly considered, was by the court sustained, because of errors in plaintiff's instructions; and to which action and ruling of the court in sustaining said motion, and in granting the intervenor a new trial herein, the plaintiff then and there duly excepted at the time and still excepts.

"And afterwards, and on the 30th day of June, 1936, the same being the 43rd day of the regular May Term, 1936, of said court, the said intervenor's motion in arrest of judgment was taken up and

submitted to the court, and having been by the court seen and heard and duly considered, was by the court sustained, because of errors in plaintiff's instructions; and to which action and ruling of the court in sustaining said motion, and in arresting the judgment herein, the plaintiff then and there duly excepted at the time and still excepts."

From the judgment granting a new trial, the plaintiff herein duly appealed.

Plaintiff's assignments of error are as follows:

"1. The court erred in sustaining the intervenor's motion for a new trial and in granting a new trial, because of 'errors in plaintiff's instructions.'

"2. The court erred in sustaining the intervenor's motion in arrest of judgment, because of 'errors in plaintiff's instructions.' "

Under "Points and Authorities" appears the following:

## "I.

"If at, or before, the assignment introduced in evidence was made there was an agreement or understanding between the defendant Rich and his attorney Armstrong, the intervenor, to the effect, that Rich should receive a part of the money owing by the garnishee in the event the intervenor should be successful in obtaining the same and that such agreement was made for the purpose of hindering, delaying or defrauding the creditors of Rich, and especially the plaintiff in this case, then such assignment was void as to this plaintiff.

## "II.

"The defendant Rich was insolvent at the time he made the assignment to intervenor Armstrong, and the same was made to defraud his creditors and in part payment of attorney's services thereafter to be rendered by Armstrong to Rich. Such assignment is void as to plaintiff who was then a judgment creditor of defendant. Armstrong at the time knew of such insolvency, and was the attorney for defendant.

## "III.

"The instructions given on behalf of the plaintiff and the one given on behalf of the interpleader submitted the theories of each claimant to the funds in the hands of the garnishee. In such a case the instructions on the part of the plaintiff need not include the theory of the intervenor's case.

## "IV.

"The court having granted a new trial 'because of errors in plaintiff's instructions,' there is therefore, but one question before this

court, viz: Did the trial court commit error in giving said instructions? If the instructions declared correct principles of law applicable to the issues in this case, then the court should not have granted a new trial and that order should be reversed.

"Where the trial court specifies particular grounds on which a new trial was granted the presumption is that all grounds not so specified were overruled."

The instructions complained of are as follows:

"1-a.

"The jury are instructed that if you find and believe from the evidence that at or before the time the assignment introduced in evidence was made, if so, there was an understanding or agreement entered into between the defendant Rich and the intervenor Armstrong that said Rich should receive a part of the money then owing by the Oliver Farm Equipment Sales Company and included in such assignment, if any, when the same was collected, and that such agreement or understanding, if any, was made for the purpose of hindering, delaying or defrauding the creditors of said Rich and especially the plaintiff, the Massey-Harris Company, then your verdict should be in favor of the plaintiff and against said Armstrong. (Given.)

"2.

"You are instructed that if you find and believe from the evidence that at the time the assignment introduced in evidence was made the defendant Rich was insolvent and that a part of the consideration for making said assignment was to secure, or was in payment of, attorney's fees thereafter to be earned by Armstrong, attorney for defendant, then said assignment was invalid and your verdict should be in favor of the plaintiff. (Given.)

"3.

"The jury are instructed that if you find and believe from the evidence that at the time the assignment introduced in evidence was made the intervenor Armstrong knew that the plaintiff then had a judgment against the defendant and knew, or by the exercise of reasonable inquiry could have known that the defendant had no property out of which said judgment could be collected, if so, and that said Armstrong induced defendant Rich to make said assignment to him partly to secure or pay him, Armstrong, for attorney's fees thereafter to be earned, if so, then your verdict should be in favor of the plaintiff, although you may believe that the defendant was then actually indebted to Armstrong. (Given.)"

The review in this case is only as to plaintiff and Armstrong, the interpleader, and in our opinion we will refer to appellant as plain-

tiff, to Oliver Farm Equipment Company as garnishee, and to R. D. Armstrong as interpleader.

## Opinion.

This case is before us on a rehearing. In our former opinion, our conclusions were based upon matters independent of the issue of fraud, urged by plaintiff, and, concluding that we may not have given such issue full consideration, a rehearing was granted.

As going to the issue of fraud, we set forth herein somewhat fully such facts in evidence as we deem must be considered in determination of such question.

The interpleader took the stand in his own behalf and his testimony is to the effect that he was employed by Mr. Rich, under the general terms set forth in our statement, and also testified as to the employment of Mr. Evans, as is stated above. This witness further testified as to services of himself and Mr. Evans, rendered during the period of litigation, 1929 to 1935, as set forth in our statement.

In the course of his testimony, the $400 note, referred to in the letter of February 4, aforesaid, was produced as an exhibit. Appearing upon this note, the following is shown: "Feb. 5, 1932. Paid by assignment in case of Oliver v. Rich. R. D. Armstrong."

Of and concerning this note, the witness testified as follows:

"Q. What was that indebtedness? What did it cover? A. That indebtedness was in the nature of a book account and was largely for seed wheat and another item or two that I do not positively recall. It very probably included the purchase of a calf I had sold him. The amount owing me at the time was a little over $400. Mr. Rich paid me the balance and gave me this note for $400."

Thereafter the following questions and answers appear:

"Q. Did Mr. Rich owe you anything else on February 3rd, 1932, the date of that assignment? A. Yes.

"Q. What else? A. He owed me at that time approximately $245 for certain services rendered in this case of the Oliver Farm Equipment Sales Company and in a companion case in which J. W. Schull was plaintiff, and he owed Mr. Evans—

Mr. Feller (interrupting): If the court please, I object to what he owed Mr. Evans. That is no consideration for this assignment.

"Q. (Mr. Parker) Do you know of your own knowledge whether or not Mr. Rich was indebted to Mr. Evans at that time? A. Yes.

Mr. Feller: That is immaterial what that indebtedness was.

"Mr. Parker: We will get to that in a minute.

"Q. (Mr. Parker) Will you tell the court and jury what your arrangement was with Mr. Rich at the time he gave you that assignment? A. I can tell you that better by this letter."

On cross-examination, the following appears:

"Q. Mr. Armstrong, at the time you took this assignment in February, 1931— A. (interrupting) 1932.

"Q. 1932, I should say? A. Yes.

"Q. At that time you knew that Massey-Harris had obtained a judgment against Rich, didn't you? A. My recollection is that at that time I had heard that the Massey-Harris Company had a judgment, but I didn't know anything about any of the details. I did afterwards obtain the particulars I think in May, 1935.

"Q. But before you took this assignment you knew that such a judgment had been obtained? A. To the best of my recollection I had heard that the Massey-Harris Company had a judgment against Mr. Rich.

"Q. And at the time you took this assignment Mr. Rich was insolvent, wasn't he? A. Not to my knowledge.

"Q. Did you know anything about his assets and liabilities? A. I did not.

"Q. You had no knowledge of that? A. No, sir.

"Q. Did you know of any property that he had? A. I was not familiar with Mr. Rich's property.

"Q. You were not familiar with it at all? A. No, sir.

"Q. And knew nothing about his financial condition? A. Not at that time.

"Q. Not at the time you took your assignment? A. That is the time I refer to.

"Q. Did you know of any property Mr. Rich had? A. I am not at all familiar with Mr. Rich's property or his liabilities or assets."

The plaintiff contends that the evidence of intervenor, set forth above, is in conflict with his statement in the letter to Rich, of February 1, 1932, wherein is stated: "I fully appreciate your financial difficulties, etc." Plaintiff contends that intervenor's testimony, as to knowledge of insolvency of Rich, is shown to be false, in that what he said in his letter aforesaid is an admission of knowledge of insolvency.

In the interpretation of evidence, it is unfair to give interpretation to expressions of the witness to convict him of false swearing, if the expressions of the witness can as easily be interpreted to harmonize. The record shows that Rich, in 1932, was having difficulties to raise funds to pay his debts, or even to supply cash for lawyers' fees and expenses of litigation. However, knowledge from which one could fully appreciate that another was having difficulties in 1932, we conclude, does not even present substantial evidence of knowledge of insolvency. Many a person and many a banking institution may be known to be having financial difficulties and still at the same time be solvent. However, actual knowledge of insolvency

does not constitute fraud, if the creditor takes only sufficient to reasonably secure his debt. [Bank v. Fry, 216 Mo. 24, l. c. 34.]

Further, every person has a right to do what he has a legal right to do, and it does not come within the province of appellate courts to inquire into the motives of a person for doing a lawful act. [State ex rel. Orr v. Buder, 308 Mo. 237, 271 S. W. 508, 39 A. L. R. 1199.]

Insofar as any of the testimony of interpleader is concerned, we find no substantial evidence of fraud that would nullify the assignment in question. However, plaintiff urges consideration of evidence given by E. L. Rich, as going to the issues of fraud, and it becomes our duty to give consideration to Mr. Rich's testimony, to the end of determining the issue.

At the close of evidence upon the part of the interpleader, the plaintiff places in evidence in rebuttal the deposition of E. L. Rich. This deposition, of but one witness, is the only evidence offered by plaintiff on the issues made up between plaintiff and intervenor.

The evidence discloses that Rich had left Kansas and was living in the state of Colorado when the assignment in issue was made.

As to the question of his solvency, Mr. Rich testified as follows:

"Q. I believe you have already testified that at the time you left Scott City you were practically broke? A. Worse than broke."

As to the consideration for the $400, referred to in interpleader's letter of February 1, 1932, supra, the following questions and answers appear in Mr. Rich's deposition:

"Q. What was the note for? A. Well, it was for attorney's fees.

"Q. It was all for attorneys' fees? A. The $400?

"Q. Yes. A. And court costs.

"Q. He was to pay the court costs too? A. Yes, sir.

"Q. And no part of it was for the wheat? A. Not this $400.

"Q. Do you know how much you owed him for wheat? A. Well, I couldn't tell you offhand, because I don't know, but I have got it in a book out to the house, I think.

"Q. Anyway, the wheat was not included in the note? A. No.

"Q. At any time did you have any correspondence or conversation with Mr. Armstrong about this assignment? A. Well, it has been so long I just couldn't recall, because I don't remember.

"Q. You would not have given it unless you had some idea about it, would you? A. Oh, no, sure I wouldn't.

"Q. According to your testimony, you only owed him $400 for attorneys' fees in the Oliver case; is that correct— A. Well, at that time.

"Q. —on the note? A. Up to that time.

"Q. You have testified, I believe, that was for services that he was to earn in that case, meaning that he was to give services in the future and to pay court costs? A. For that much.

"Q. Did you ever pay Mr. Armstrong any money in cash? A. I did not."

The above testimony was given on direct testimony. On cross examination the following questions and answers appear:

"Q. Do you remember whether or not, at the time this note was given, that you had a settlement with me of the indebtedness that you were then owing me, in the nature of a book account, which included some seed wheat? Have you any recollection of that? A. I don't just remember, but I believe so.

"Q. Do you remember this, Mr. Rich: That at that time your indebtedness to me was something over $400, and that you paid me the excess over $400, in cash, and gave me your note for the $400? A. That I settled up with you and then gave you a note for the balance?

"Q. Yes. A. I believe that is right.

"Q. I understood you to say a while ago, Mr. Rich, that the indebtedness you owed me for seed wheat was not included in this note. You are mistaken about that, are you not? A. Well, I believe I am wrong since thinking it over.

"Q. These matters did occur some four to six years ago, did they not? A. Yes, they did.

"Q. And you said something a while ago about this $400 note being given for attorneys' fees. You are mistaken about that, are you not? A. It has been so long I don't remember a lot of these things.

"Q. Is it not a fact, Mr. Rich that no attorneys' fees whatever were included in this note; that the note was for an indebtedness that you owed me entirely independent of attorneys' fees? A. Yes, I believe you are right."

On re-direct examination, the following question and answer appears:

"Q. Mr. Rich, you have already testified, I believe, that the purpose of this $400 note was to repay an indebtedness that you owed Mr. Armstrong for some seed wheat, perhaps a bull calf, or some other items, and also for services in this litigation with the Oliver Company? A. Yes."

Thereafter as follows:

"Q. At the time you gave this note for $400, on September 4, 1930, what understanding did you have with Mr. Armstrong as to the amount of his attorneys' fees for that litigation? A. Well, I don't know as right then there was any understanding.

"Q. Don't you recall some reason why the note was given for $400? A. Yes.

"Q. I understand you had some kind of a conversation about what you owed him at 'that time? A. Yes. Well, he had to go

522

ahead and put up the money to go ahead with this lawsuit, because I didn't have it to put up.

"Q. Wasn't there some accounting made at that time as to money for the lawsuit and attorneys' fees, seed wheat, and those things? A. He was to go ahead and furnish the money himself.

"Q. Whatever was necessary? A. Yes, sir, because he had to. I didn't have it.

"Q. But you did not know how much it would be? A. No, sir.

"Q. Anyway, the $400 was to cover it. Was that your understanding? A. Partially."

On further re-cross examination appear the following questions and answers:

"(Question read as follows: 'Is it not a fact that the $400 note, the note that you gave me, was in settlement of an account that you owed me, and did not include at that time any attorneys' fees or expenses which I had advanced in that litigation?')

"A. Yes, I believe that is right. I believe I was wrong in the other answers.

"Q. Now, I will ask you if the indebtedness which you owed me for the wheat was included in this $400 note? A. No, I don't believe it was.

"Q. Do you have any recollection of any other settlement for the wheat? You did not pay me for it, did you? A. No; I gave you a mortgage on the wheat.

"Q. The mortgage on the wheat was given to secure this note, was it not?

"MR. KING: That is objected to as leading, supplying the necessary answer, and I move that the question and answer be stricken.

"A. Yes.

"Q. Then it is true, is it not, that the note and mortgage were given to secure the purchase price of the seed wheat?

"MR. KING: Objected to as leading; for the further reason that it has been already asked and answered.

"A. Yes.

"Q. When you made this assignment to me of this account, Mr. Rich, that assignment was given to me in satisfaction of this $400 note, and in satisfaction of attorneys' fees of both Mr. Evans and myself, and moneys I had advanced to pay expenses incidental to the litigation; isn't that true? A. Yes."

Thereafter in re-direct examination as follows:

"Q. I believe that you have already testified that you transferred all of your interest in this litigation to Mr. Armstrong? A. Yes.

"Q. Now, if he is successful in this litigation, in this particular case, to which the Massey-Harris Company is a party, what will you gain by it? A. Well, whatever there is left I suppose I will get back, if there is anything left after the expenses are paid.

"Q. That is your understanding with Mr. Armstrong? A. Yes."
Thereafter on re-cross examination:

"Q. When you received this assignment from me, you received the letter which you have identified? A. Yes.

"Q. And in response to that letter, you executed and mailed this assignment back to me, did you not? A. I did."

If it could even be concluded that the testimony of the interpleader, by reason of contradiction between his letters and his testimony, showed perjury of a character that would exclude same from consideration, we would still have the documentary evidence (letter of February 1, 1932, and assignment of February 3, 1932) and would still be confronted with the fact that the plaintiff must rely alone on the testimony of one witness to prove its issue of fraud.

We have expressed our conclusion above that the testimony of the intervenor, when interpreted by correct rule of interpretation, is not necessarily contradictory, even as to knowledge of insolvency of Rich. Therefore, under such conclusion, the plaintiff is confined to the testimony of the one witness to prove the issue. Take either horn of the dilemma and plaintiff is confined to the one witness, E. L. Rich, to prove the given issue, as to fraud.

From a consideration of Mr. Rich's testimony, we find it so contradictory that we conclude it has no probative value as proving plaintiff's charge of fraud, as set out in its answer to the interplea of intervenor.

In Adelsberger v. Sheehy, 332 Mo. 954, l. c. 961, it is said:

"Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted."

Giving the most charitable estimate of witness Rich, it must be said that his memory was of such a nature that he changed his testimony from one "yes" to another "yes" of opposite effect, according to having his recollection refreshed, and it would appear that when refreshed, his testimony corroborates intervenor. The last questions and answers, in the re-direct testimony of Mr. Rich, clearly shows change from presumption to fact, under the subtle wording of questions asked. We conclude that (regardless of the fact that this witness did change his supposition into statement positive of his understanding that he would get something back if anything left) the testimony of Mr. Rich is not such as a jury should be permitted to speculate or guess which statement should be accepted. The fact that the letter of February 1, 1932, was received and acted upon by

Rich in making the assignment is clearly shown by the record. These documents speak for themselves and cannot be considered as meaning other than is therein expressed by the evidence of a witness as conflicting as is shown by the record of the testimony given by Mr. Rich.

From our examination of the record in this case, we find no fact or circumstance in evidence that tends to prove the grave charges of conspiracy and fraud contained in plaintiff's answer to the interplea of intervenor herein.

This suit was filed April 12, 1932, and service had on garnishee September 30, 1932, and interrogatories filed November 14, 1932. From and after aforesaid date of filing of interrogatories, there is no showing of any further action until August 7, 1935, when supplemental answer to interrogatories is filed. Thereafter the plaintiff waits 10 months to join issue upon answer of garnishee, the same being after the judgment secured by garnishee against Rich had been reversed and cause remanded.

It appears evident that action in this suit was held up for a period of approximately three years. During this period, intervenor, at cost of his time and means, was performing the services that established the right to the funds in controversy. We are impelled to the conclusion that there was a purpose in the aforesaid delay on the part of plaintiff and we infer that the purpose of said delay was with some intent to avail of the fruits of labor and expense that plaintiff was unwilling to expend.

It is further urged by plaintiff that the intervenor presented his case upon the same theory as plaintiff, and is urged that intervenor, therefore, cannot complain as to instructions given on behalf of plaintiff. As to such contention, we note that there is no showing to the effect that plaintiff made even admission that the assignment in issue was ever made, nor that, if made, there was a valid consideration for same. Under such a showing, we conclude that it is inconsistent for plaintiff to make claim that intervenor presented his case on same theory as plaintiff. Further, the only instruction given on behalf of intervenor, we conclude, presents an entirely different theory than that of plaintiff. Said instruction is as follows:

"The court instructs the jury that if you find and believe from the evidence that defendant, E. L. Rich, for a good and valuable consideration assigned to intervenor, R. D. Armstrong, the sum of eight hundred ten dollars and twenty-eight cents ($810.28) and all his right, title and interest in, to and under said bond executed by garnishee, Oliver Farm Equipment Sales Company, in its case numbered 3098 against defendant, E. L. Rich, in the District Court of Scott County, Kansas, then you will find the issues in favor of intervenor, R. D. Armstrong, and against plaintiff, the Massey-Harris Company, and you will further find that said intervenor, R. D. Arm-

strong, is entitled to the funds now in possession of the garnishee, Oliver Farm Equipment Sales Company."

Based upon our consideration and conclusions on the issue of fraud, as fully disclosed above, we conclude that the giving of plaintiff's instruction No. 1 presents error.

Having concluded as to the issue of fraud, we give consideration to plaintiff's instructions Nos. 2 and 3. In said instructions the question of payment of attorneys' fees thereafter to be earned is submitted to the jury. As to such issue, we adopt and reiterate that which was said in our former opinion written by Judge Bland.

We think there is no doubt but that the court erred in giving these instructions. There are transfers of property or money to an attorney for his services, under certain circumstances, that are void as against creditors, but where the extent of the employment is fixed or determined and is to be commenced and carried out in the immediate present, and the charge is reasonable, the transfer, if made in good faith, is not void even though the debtor is insolvent at the time of the making of the transfer. [27 C. J., p. 529; Quinn v. Union National Bank, 32 Fed. (2d) 762, 771; Seals v. Snow, 126 Kas. 246; Bank v. Greene, 102 Kas. 202; Bank v. Greene, 105 Kas. 303.] However, where there is a general employment for the rendition of indefinite legal services at some indefinite future time and based on some future contingency, then the transfer is void as against existing creditors. [Quinn v. National Bank, *supra*; The Winfield National Bank v. Croco, 46 Kas. 629, 634; Shellabarger v. Mattin, 47 Kas. 451; Marshall v. Van De Mark, 57 Kas. 304; Bank v. Pirotte, 107 Kas. 573.]

Here the evidence shows that the services to be rendered in consideration of the transfer were in a suit pending and, consequently the employment was not for some indefinite future time and based on some future contingency. The instructions were erroneous.

The plaintiff in its brief raises points concerning assignment of the bond and notice of such assignment. We have set forth above the assignment of errors upon which the plaintiff asked a review. The assignments do not present the questions involved in aforesaid points. These points are raised only in the argument and not in the "Assignment of Errors" and, therefore, cannot be considered by us on this appeal. [Scott v. Mo. Pac. R. R. Co., 62 S. W. (2d) 834.]

The judgment of the court, in granting a new trial, is affirmed. *Bland, J.,* concurs; *Kemp, J.,* not sitting.