IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DAN CAREY, *Plaintiff/Judgment Creditor/Appellee*,

*v.*

GARY SOUCY, et al., *Defendant/Judgment Debtor/Appellant*,

XYZED LLC, *Intervenor/Appellant*.

No. 1 CA-CV 17-0533
FILED 10-30-2018

Appeal from the Superior Court in Maricopa County
No. CV2012-092926
The Honorable Margaret Benny, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Udall Shumway PLC, Mesa
By Joel E. Sannes
*Counsel for Plaintiff/Judgment Creditor/Appellee*

Baker & Baker, Phoenix
By Thomas M. Baker
*Counsel for Defendant/Judgment Debtor/Appellant and Intervenor/Appellant*

_____

## OPINION

Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Jon W. Thompson joined.

_____

**W I N T H R O P**, Judge:

**¶1** In this garnishment proceeding, the judgment debtor requested a jury trial on the validity of an assignment to funds that the judgment creditor claimed was a fraudulent transfer. We hold that, under these circumstances, there is no right to a jury trial in garnishment proceedings with respect to whether an assignment would constitute a fraudulent transfer. Judgment debtor Gary Soucy and intervenor XYZED, LLC appeal from the denial of Soucy's objection to the application for writ of garnishment, the denial of their motion for new trial, and the garnishment judgment in favor of judgment creditor Dan Carey. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2** In February 2016, Gary Soucy stipulated to judgment against him and in favor of Dan Carey for $175,000 (the "Judgment"). Carey recorded the Judgment two days after it was signed and filed.

**¶3** In September 2016, Soucy, in a separate matter and represented by attorney James Mack, entered a settlement agreement with an estate ("Garnishee"), requiring the estate to pay Soucy $50,000 on or before October 7, 2016, and another $50,000 on or before January 7, 2017 (the "Settlement").

**¶4** On October 7, 2016, Mack received the first Settlement payment in his firm's trust account. Mack and Soucy met at Mack's bank later that day; from the $50,000, Mack paid his firm $25,320.07, representing unpaid attorneys' fees due and owing from Soucy, and wrote Soucy a check for the remaining $24,679.93. Soucy cashed the check before leaving the bank.

**¶5** On October 18, 2016, Carey served a writ of garnishment on Mack in an attempt to collect the Judgment. Mack answered that he was not indebted to or otherwise in possession of monies belonging to Soucy.

¶6 At some point in October 2016, Soucy, Mack, and XYZED, whose sole member is Mack, executed an agreement in which Soucy assigned the second $50,000 Settlement payment to XYZED (the "Assignment") and XYZED loaned Soucy $40,000.[1] The purported purpose of the Assignment was for Soucy to use the $40,000 to take advantage of a time-sensitive business opportunity to purchase goods for resale. In addition to assigning the second Settlement payment, Soucy also agreed to remit $3,800 to XYZED upon the resale of the purchased goods. The $40,000 loan was made up of two separate wire transfers: (1) $15,000 wire transferred from the Mack law firm operating account to Lighthouse Ventures, LLC[2] on September 21, 2016 (prior to the Assignment) and (2) $25,000 wire transferred from the Mack law firm operating account to Lighthouse Ventures, LLC on October 18, 2016. Mack later provided counsel for Garnishee with a copy of the Assignment.

¶7 On December 23, 2016, Carey served a writ of garnishment on Garnishee. Garnishee answered that it was in possession of $50,000 due and owing to Soucy (the second Settlement payment) and noted that Mack had provided an agreement purporting to assign the $50,000 debt to XYZED. Soucy objected and requested a hearing, alleging Garnishee's answer was incorrect. Soucy included a jury trial demand in his request for hearing.

¶8 Mack initially represented Soucy in the garnishment proceeding, but the superior court found that Mack's representation of Soucy was a conflict of interest, and ordered Soucy to retain new counsel or proceed *pro per*. XYZED, also represented by Mack, moved to intervene in the garnishment proceeding. Soucy and XYZED then obtained the same counsel, and the court set a hearing. The court was provided with conflict waivers and, after denying the request for a jury trial, proceeded with the hearing.

¶9 In the garnishment proceeding, the superior court determined: (1) the Assignment of the $50,000 from Soucy to XYZED was a fraudulent transfer; (2) XYZED did not take the transfer in good faith; and (3) the transfer was not for reasonably equivalent value. The court denied Soucy's and XYZED's objections to the writ of garnishment and entered

---

[1] The Assignment is dated October 7, 2016; however, Mack later testified Soucy did not see it until "mid to late October."

[2] At the time, Lighthouse Ventures, LLC was an administratively-dissolved Wyoming limited liability company.

judgment for $50,000 in favor of judgment creditor Carey against Garnishee.

¶10 Soucy and XYZED moved for a new trial, contending they were erroneously denied their timely request and right to a jury trial, and the superior court's finding of a fraudulent transfer was contrary to law. *See* Ariz. R. Civ. P. 59(a)(1)(A). The court denied the motion, finding that it was authorized by statute to determine and set aside a fraudulent transfer in a garnishment hearing without a jury, and sufficient evidence supported the finding that the transfer between Soucy and XYZED was a fraudulent conveyance.

¶11 Soucy and XYZED timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) and (A)(5).[3]

## DISCUSSION

### I. There Is No Right to a Jury Trial in a Garnishment Proceeding

¶12 Soucy and XYZED contend they have a right to a jury trial on the fraudulent transfer issue. Whether a party is entitled to a jury trial is a question of law we review *de novo*. *In re Estate of Newman*, 219 Ariz. 260, 271, ¶ 42 (App. 2008) (citing *Stoudamire v. Simon*, 213 Ariz. 296, 297, ¶ 3 (App. 2006)).

¶13 Soucy and XYZED argue the superior court wrongly denied them a jury trial under Article 2, Sections 23 and 24 of the Arizona Constitution, which preserves the right to a jury in those actions that existed at common law at the time the Constitution was adopted in 1910. *Life Investors Ins. Co. of Am. v. Horizon Res. Bethany, Ltd.*, 182 Ariz. 529, 532 (App. 1995); *see also Newman*, 219 Ariz. at 272, ¶45. They argue the Uniform Fraudulent Transfer Act ("UFTA") as adopted in Arizona is a declaration of common law, *see Hay v. Duskin*, 9 Ariz. App. 599, 604 (1969); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 43 (1989); therefore, they are entitled to a jury trial.

---

[3] Soucy's and XYZED's briefing to this court substantially fails to provide citations to the record in support of its factual assertions, in violation of Arizona Rules of Civil Appellate Procedure ("ARCAP") 13(a)(5) and (7). As such, we do not rely on their recitation of those facts and instead rely on the record available to this court.

¶14    Soucy and XYZED misapprehend the nature of garnishment. It is not a cause of action—it is a remedy. The constitutional provisions Soucy and XYZED rely upon simply do not apply in this setting. In a garnishment proceeding, the superior court, "sitting without a jury, shall decide all issues of fact and law." A.R.S. § 12-1584(E). Additionally, UFTA specifically provides for garnishment as a remedy and states that the garnishment remedy be "in accordance with the procedure prescribed by law in obtaining such remedy." A.R.S. § 44-1007(A)(1). It is well settled that the legislature is presumed to know existing law when it enacts a statute. *Wareing v. Falk*, 182 Ariz. 495, 500 (App. 1995) (citing *State v. Garza Rodriguez*, 164 Ariz. 107, 111 (1990); *Daou v. Harris*, 139 Ariz. 353, 357 (1984)).

¶15    Soucy and XYZED failed to cite, and our independent research did not discover, a case where in the absence of a state statute authorizing it, a court has ordered a jury trial on a fraudulent transfer within a garnishment proceeding. This is not surprising. Garnishment was not a cause of action that existed under the common law. As stated in *Andrew Brown Co. v. Painters Warehouse, Inc.*, 11 Ariz. App. 571, 572 (1970):

> [G]arnishment was unknown to the common law; it has come into being as a statutory remedy. *State v. Allred*, 102 Ariz. 102, 425 P.2d 572 (1967); 3 J. G. Sutherland, Statutes and Statutory Construction Sec. 7005 (3d ed. 1943); 38 C.J.S. Garnishment [§] 1 (1943). Since garnishment is a creature of statute, garnishment proceedings are necessarily governed by the terms of those statutes. *Davis v. Chilson*, 48 Ariz. 366, 62 P.2d 127 (1936); *Moody v. Lloyd's of London*, 61 Ariz. 534, 152 P.2d 951 (1944); *State v. Allred, Supra*. Thus, courts may not allow garnishment proceedings to follow any course other than that charted by the legislature. *See Undercofler v. Brosnan*, 113 Ga. App. 475, 148 S.E.2d 470 (1966); *Siegel, Cooper & Co. v. Schueck*, 167 Ill. 522, 47 N.E. 855 (1897); 38 C.J.S. Garnishment [§] 3 b (1943).

¶16    It is also significant to note that judgment creditor Carey did not initiate a civil case alleging fraudulent transfer against Soucy, Mack, and XYZED; rather, Carey utilized the garnishment framework established by statute to ascertain whether Garnishee was holding funds that belonged to Soucy. Soucy objected to Garnishee's answer and requested a hearing in the garnishment proceeding, thus availing himself of and subjecting himself to the parameters of the garnishment statutes. Had Garnishee already transferred the second Settlement payment to Soucy, Carey's recourse would have been to file an affirmative civil claim for fraudulent

conveyance in superior court, seeking the return of the funds. While we need not reach the issue, a request for a jury trial might present a different question in that procedural context.

**¶17** Here, because Carey was not seeking return of property already transferred, we see no reason to disrupt the statutory framework and the long line of cases permitting fraudulent conveyance matters to be resolved in garnishment proceedings without a jury. *See Sackin v. Kersting*, 105 Ariz. 464, 465 (1970) ("Garnishment is an appropriate remedy to be utilized in cases of fraudulent conveyances." (citation omitted)), *opinion supplemented on reh'g*, 105 Ariz. 566 (1970); *Premier Fin. Servs. v. Citibank (Ariz.)*, 185 Ariz. 80, 86 (App. 1995) (affirming superior court's conclusion at a garnishment proceeding that parents fraudulently transferred a certificate of deposit to their daughter); *Retzke v. Larson*, 166 Ariz. 446, 448 (App. 1990) ("Legal action to prove a fraudulent conveyance need not be separate from the garnishment proceeding."); *Transamerica Ins. Co. v. Trout*, 145 Ariz. 355, 359 (App. 1985) (determining that "[g]arnishment is an appropriate remedy for recovering the proceeds of a fraudulent conveyance").

## II. *Ample Evidence Supports the Fraudulent Transfer Ruling*

**¶18** Soucy and XYZED contend that the superior court erred in finding that the Assignment was a fraudulent transfer and that XYZED took the Assignment in bad faith without giving a reasonably equivalent value.

**¶19** We review the superior court's garnishment judgment for an abuse of discretion. *See Cota v. S. Ariz. Bank & Trust Co.*, 17 Ariz. App. 326, 327 (1972). A court abuses its discretion where the record fails to provide substantial support for its decision or the court commits an error of law in reaching the decision. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456 (1982); *see also Torres v. N. Am. Van Lines, Inc.*, 135 Ariz. 35, 40 (App. 1982) (discretion abused if "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons"). We view the evidence in a light most favorable to sustaining the superior court's ruling. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998). It is the role of the trial court to weigh the evidence, *id.* at 347, ¶ 13, and "[w]e must give due regard to the trial court's opportunity to judge the credibility of the witnesses," *Double AA Builders, Ltd. v. Grand State Const. L.L.C.*, 210 Ariz. 503, 511, ¶ 41 (App. 2005). Accordingly, we will not disturb the judgment if there is evidence to support it. *Yano v. Yano*, 144 Ariz. 382, 384 (App. 1985).

¶20 Our review of the superior court's findings of fact is limited to determining whether they are clearly erroneous. *Triple E Produce Corp. v. Valencia*, 170 Ariz. 375, 379 (App. 1991) (citation omitted). In this case, the record contains substantial evidence related to statutory factors and other "badges of fraud" sufficient to support the court's findings.

### A. A.R.S. § 44-1004(B) Factors

¶21 A transfer is fraudulent as to a creditor "if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor." A.R.S. § 44-1004(A)(1). The UFTA identifies eleven specific factors that may be considered (among other factors) in determining "actual intent." A.R.S. § 44-1004(B)(1)-(11).

¶22 Here, considering the enumerated factors identified in § 44-1004(B), the evidence, taken in a light most favorable to sustaining the superior court's ruling, supports the finding of a fraudulent transfer. *See Gutierrez*, 193 Ariz. at 346, ¶ 5. In the Assignment, Soucy assigned the funds to XYZED, of which Mack—Soucy's attorney—is the sole member. A.R.S. § 44-1004(B)(1). Additionally, but for the garnishment proceeding, there is no evidence that the Assignment would have been disclosed to either the Garnishee or Carey. A.R.S. § 44-1004(B)(3). Before the Assignment, Carey had sued for and obtained the Judgment against Soucy. A.R.S. § 44-1004(B)(4). Further, Carey had to resort to garnishment proceedings to collect on the Judgment—Soucy testified that before he received the proceeds of the Settlement, he "didn't have any money" to pay his attorney. A.R.S. § 44-1004(B)(5). The record also suggests Soucy removed or concealed assets when he instructed Mack to wire the two payments to a bank account for Lighthouse Ventures, an administratively-dissolved Wyoming LLC, rather than to Soucy himself. A.R.S. § 44-1004(B)(7). The Assignment occurred within nine months of the Judgment. A.R.S. § 44-1004(B)(10).

¶23 Taken together, the statutory factors have "a tendency to show the existence of fraud" and often only "a single one of them may establish and stamp a transaction as fraudulent." *Gerow v. Covill*, 192 Ariz. 9, 17, ¶ 34 (App. 1998) (discussing the Uniform Fraudulent Conveyance Act, the predecessor to the UFTA) (quoting *Torosian v. Paulos*, 82 Ariz. 304, 312 (1957)). When, as here, several statutory factors are present, "strong, clear evidence will be required to repel the conclusion of fraudulent intent." *Id.* Based on our review of the record, Carey presented sufficient evidence to support the court's finding of a fraudulent conveyance.

### B.     Other Badges of Fraud

¶24     In addition to the A.R.S. § 44-1004(B) factors, the common law recognizes additional "badges of fraud" that may also support the superior court's findings.  "Badges of fraud" are

> facts which throw suspicion on a transaction, and which call for an explanation. . . . [T]hey are the signs or marks of fraud. They do not of themselves or per se constitute fraud, but they are facts having a [tendency] to show the existence of fraud, although their value as evidence is relative and not absolute. . . . When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent.

*Torosian*, 82 Ariz. at 312 (quotations and citation omitted).

¶25     Here, it was not clearly erroneous for the superior court to consider the chronology of events as a badge of fraud.  *See Triple E Produce Corp.*, 170 Ariz. at 379.  Soucy and Mack entered an attorney-client relationship regarding the Garnishee before Carey obtained the Judgment against Soucy.  Although the Assignment is dated October 7, 2016, it was purportedly not executed until later that month.  The Assignment states that XYZED "will lend" $40,000 in exchange for the second $50,000 payment, plus an additional $3,800.  However, at the time of the Assignment, Mack/XYZED had already wired Lighthouse Ventures (Soucy's administratively-dissolved LLC) the first $15,000 of funds the previous month, even though Soucy then owed over $23,000 in unpaid attorneys' fees.  The next month, Mack/XYZED wired the remaining amount of $25,000 from the Mack firm operating account to Lighthouse Ventures.[4]  Although Mack testified he "investigated" Lighthouse Ventures, he did not do so before the transfer of funds.

¶26     Additionally, Soucy paid Mack his initial retainer and subsequent payments in cash.  Upon receiving the first $50,000 Settlement payment from Garnishee, Mack and Soucy met at Mack's bank, where Mack wrote Soucy a check for over $24,000 (the amount left after unpaid attorneys' fees), which Soucy immediately cashed before leaving the bank. Soucy and XYZED contend that utilizing cash in this manner is, in and of

---

[4]     XYZED did not open a bank account until more than a month after the second wire transfer to Lighthouse Ventures.

itself, not illegal. They cite *In re $315,900.00*, a case involving the state's burden to establish probable cause for forfeiture. 183 Ariz. 208 (App. 1995). While using cash exclusively, without other considerations, is not illegal, we see no error in the trial court finding Soucy's practice of using cash exclusively under these circumstances as an additional badge of fraud.

¶27 Considering the A.R.S. § 44-1004(B) factors, the other badges of fraud, and judging the credibility of the witnesses, the superior court did not abuse its discretion in determining that the Assignment was a fraudulent transfer.

### C. *Good Faith*

¶28 Likewise, the superior court did not abuse its discretion in determining that XYZED did not take the Assignment in good faith, which would constitute a defense to voiding the Assignment. A.R.S. § 44-1008(A).

¶29 In determining good faith, the question is whether XYZED knew, or should have known, that Soucy "was not trading normally, but that on the contrary, the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors." *See Hay*, 9 Ariz. App. at 605. Additionally, "[n]otice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is . . . equivalent to knowledge of all of the facts a reasonably diligent inquiry would disclose." *Hall v. World Sav. & Loan Ass'n*, 189 Ariz. 495, 500-01 (App. 1997) (quotations and citation omitted).

¶30 There were many facts that should have put XYZED on notice that Soucy intended to defraud his creditors. *Hay*, 9 Ariz. App. at 605. Mack was Soucy's attorney in the Settlement matter at the time Soucy stipulated to the Judgment in favor of Carey. Mack, XYZED's sole member, loaned $40,000 to Soucy, his client, who was already indebted to him for almost $24,000 in past-due attorneys' fees. Additionally, Soucy and/or Mack directed that XYZED transfer the money from the Mack firm operating account to Lighthouse Ventures, not to Soucy. After the two transfers, Mack investigated Lighthouse Ventures and learned it had been administratively dissolved. Additionally, as noted above, all of Soucy's payments to Mack were in cash and Soucy cashed a check for $24,679.93 rather than depositing the funds. These facts provided ample evidence to

support the superior court's finding that the Assignment was not taken in good faith.[5]

### D.    *Attorneys' Fees and Costs*

**¶31**    Soucy and XYZED request their attorneys' fees and costs under A.R.S. § 12-1580(E), which permits the court to award attorneys' fees and costs to the prevailing party in a garnishment action.  Carey requests his attorneys' fees and costs under A.R.S. § 12-1580(E).  Carey also requests his attorneys' fees as a sanction under ARCAP 25, contending that Soucy's and XYZED's appeal was frivolous.

**¶32**    Because they were not the prevailing parties, Soucy's and XYZED's request for attorneys' fees is denied.  In our discretion, we award reasonable attorneys' fees and costs to Carey under only A.R.S. § 12-1580(E) in an amount to be determined upon compliance with ARCAP 21.

## CONCLUSION

**¶33**    For the foregoing reasons, we affirm.  We award reasonable attorneys' fees and costs to Carey upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[5]    We need not reach whether the Assignment was made for reasonably equivalent value; for XYZED to avail itself of the defense under A.R.S. § 44-1008, it must have taken the Assignment "in good faith *and* for a reasonably equivalent value."  A.R.S. § 44-1008(A) (emphasis added).  Because the superior court did not abuse its discretion in determining XYZED did not act in good faith, we need not analyze whether the Assignment was taken for a reasonably equivalent value.